HARMSEN *v.* FIZZELL.

HABEAS CORPUS—CUSTODY OF CHILDREN—EQUALLY DIVIDED COURT.
  Order of circuit court, restoring custody of children to their father
    on habeas corpus after finding he was a fit person and that
    there was no evidence to the contrary and denial of motion to
    dismiss because the probate court had jurisdiction, is affirmed
    by an equally divided court.

Appeal from Berrien; Robinson (Thomas N.), J.
Submitted June 11, 1957. (Docket No. 48, Calendar
No. 47,013.) Decided December 24, 1957. Rehearing
granted March 4, 1958. See 354 Mich 60.

Habeas corpus by Gordon L. Harmsen against
Deane Fizzell, Theo Fizzell, William Johnston and
Donna Johnston to obtain return of his children into
his custody. Orders granting plaintiff custody. De-
fendants appeal. Affirmed by an equally divided
court.

*A. H. Lee,* for plaintiff.

*James L. Colman,* for defendants Fizzell.

*A. G. Preston, Jr.,* for defendants Johnston.

SHARPE, J. *(for affirmance).* This is a habeas
corpus proceeding brought by Gordon L. Harmsen,
the father of David L. Harmsen and Ruth Harmsen,

REFERENCES FOR POINTS IN HEADNOTES
3 Am Jur, Appeal and Error § 1160; 25 Am Jur, Habeas Corpus
  §§ 78–83.

following denial by the probate court of Berrien county of the father's petition for the restoration of his children by the probate court. The chain of events leading up to the application for writ of habeas corpus is as follows.

Gordon L. Harmsen and Marie Harmsen were married, and as a result of their marriage 3 children were born. On May 29, 1953, Mary Ash, a neighbor of the Harmsens, filed a petition in the Berrien county probate court, juvenile division, praying that the court take jurisdiction of the 3 children. Upon the filing of the petition the probate court entered an order directing the county agent to make a full investigation and report her findings to the probate court. On June 19, 1953, plaintiff was declared mentally incompetent by the Berrien county probate court and confined to the Kalamazoo State hospital. His wife, Marie Harmsen, was appointed guardian of his person and estate by the Berrien probate court.

On May 20, 1954, Marie Harmsen filed a petition in the probate court of Berrien county praying for the juvenile division of probate court to take jurisdiction of the 3 Harmsen children. On the following day an order was entered in the probate court which reads as follows:

"In the matter of Roger Allen Harmsen
                David Leroy Harmsen
                Ruth Etta Harmsen
                              A juvenile

"To Frances M. Milton, county agent for said county:

"Marie Harmsen having reported to this court that said Roger, David and Ruth Harmsen is a juvenile within the meaning of PA 1944 (1st Ex Sess), No 54, you are hereby notified and required to inquire into and make a full examination of the parentage and surroundings of said child, and the facts and

circumstances alleged by Marie Harmsen, and report the same to said court.

"Dated this 21st day of May A.D. 1954.

"/s/ MALCOLM HATFIELD
Judge of Probate

"Filed May 21st 1954."

It also appears that on May 20, 1954, Marie Harmsen signed certain forms consenting to the adoption of all 3 minor children. On May 28, 1954, two summonses were issued out of the probate court reciting Marie Harmsen's petition, and hearing was set for June 2, 1954. Proof of service of this summons appears for Gordon L. Harmsen, by service upon the superintendent of Kalamazoo State hospital, but with no personal service upon Marie Harmsen, the mother of the children.

On June 2, 1954, an assistant county welfare agent made a report wherein she recommended that all 3 children be committed to the Michigan Children's Institute for the purpose of adoption, and on the same day the probate judge entered an order "that this case be adjourned indefinitely but that the children remain under the jurisdiction of this court until further action is taken." David Harmsen was placed in the custody of defendants, Deane Fizzell and Theo Fizzell, and Ruth Harmsen was placed in the custody of William Johnston and Donna Johnston. Roger Harmsen was placed with different people from time to time.

On June 30, 1955, plaintiff was declared competent by the Berrien probate court. On May 1, 1956, he petitioned the probate court for the custody of David and Ruth Harmsen. After an investigation was made the probate court dismissed plaintiff's petition for restoration of his 2 children. Subsequently defendants Fizzell and Johnston filed petitions in the probate court requesting orders be made committing David Harmsen and Ruth Harmsen to the

Michigan Children's Institute for the purpose of adoption. A hearing on this petition was set for July 17, 1956, but before any hearing was held, plaintiff, on June 15, 1956, filed his petition in the Berrien circuit court for writ of habeas corpus and ancillary writ of certiorari. On June 15, 1956, plaintiff appealed from the order of the probate court dismissing his petition for restoration of his 2 children.

On July 6, 1956, an order was filed by the circuit judge restoring custody of David and Ruth Harmsen to plaintiff. On the hearing of plaintiff's petition for writs of habeas corpus and certiorari, the defendants, on June 22, 1956, moved for the dismissal of the writs of habeas corpus and certiorari for the reason that the children were under the jurisdiction of the juvenile division of the Berrien probate court, which jurisdiction was exclusive and original. This motion was denied and in an opinion the trial court stated:

"There is no question that the jurisdiction of the probate court under the juvenile act is original and exclusive in some respects. There is no question that habeas corpus cannot be substituted for a writ of error or to be made to serve the purpose of a writ of error; but in this case the probate court has never made an appealable order. There is an illegal detention, the very condition that gave rise to the original jurisdiction of the probate court having been removed when the father, Gordon Harmsen, was restored to health on June 30, 1955. The changed condition of the status of the children left nothing to justify any action whatsoever by the probate court, either on the father's petition for restoration of the children, which he filed, or otherwise; and nothing remained but to return the children to him. There being no order of any court to the contrary, the father, Gordon Harmsen, could have proceeded, had he so desired, to obtain his children without the process of any court. He saw fit, however, to request the cooperation of the probate court in the premises,

which was denied him; nothing remained then for him to do but obtain the writ in the present proceedings, where the only question that could possibly be presented is that of his fitness as a father to have his children.

"All of the testimony in the habeas corpus proceeding demonstrates such fitness ever since June 30, 1955. Nothing whatsoever appears to the contrary. One of the children is in the home of and in the custody of Ruth Pearson, whom the father intends to marry as soon as the interlocutory period in divorce has been concluded, decree having been granted the father in this court, in chancery, on May 1, 1956. The friend of the court in the divorce proceedings definitely approves such home and so testified at this hearing. His present home is adequate."

The principal issue in this case is whether the juvenile division of the probate court or the circuit court has jurisdiction over the custody of the 2 minor children. It is urged by defendants that the juvenile division of the probate court is exclusive and the trial court had no authority to issue writs of habeas corpus.

Probate courts are courts of limited jurisdiction and must comply with statutory requirements in order to obtain legal jurisdiction of minors. In *MacKenzie* v. *Union Guardian Trust Co.*, 262 Mich 563, 582, we quoted with approval from *Grady* v. *Hughes*, 64 Mich 540, 545, as follows:

" 'The probate court derives none of its jurisdiction or power from the common law, but must find the warrant for all of its doings in the statute. Its jurisdiction, powers, and duties are prescribed by law.' "

Under CLS 1954, § 712A.2 (Stat Ann 1955 Cum Supp § 27.3178[598.2]), the juvenile division of the probate court shall have:

"(b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county

"(1) Whose parent or other person legally responsible for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical or other care necessary for his health, morals or well-being, or who is abandoned by his parents, guardian or other custodian, or who is otherwise without proper custody or guardianship; or

"(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality or depravity on the part of a parent, guardian or other custodian, is an unfit place for such child to live in, or whose mother is unmarried and without adequate provision for care and support."

We shall first discuss the Mary Ash petition to determine whether the probate court had jurisdiction to make an order relative to their custody. The Mary Ash petition was filed May 29, 1953, praying that the juvenile court take jurisdiction of the 3 children. Upon the filing of this petition the probate court entered an order directing the county agent to make an examination and report her findings to the court. The record fails to show that the probate court took any further action on this petition, hence, the petition of Mary Ash needs no further consideration.

We now come to the petition of Marie Harmsen filed May 20, 1954. The petition states that she is the mother of the children, 8, 7, and 4 years of age respectively, and that they are residing with her in Berrien Springs and are under her custody and control. The petition further states:

"Said children are beyond my control. I am not physically well enough to cope with them. I know that they would be better off were they placed in good adoptive homes. Their father is in Kalamazoo

State hospital and I have been told that he is incurable. The children need security that I cannot give them."

The following day, May 21, 1954, the probate court requested the county agent to investigate the matter. On May 28, 1954, two summonses were issued out of the probate court reciting Marie Harmsen's petition and hearing was set for June 2, 1954. Proof of service of this summons appears for Gordon L. Harmsen by service upon the superintendent of Kalamazoo State hospital, however no personal service was had upon Marie Harmsen.

It also appears that a report was made to the judge of probate by an assistant county welfare agent recommending that the 3 children be committed to the Michigan Children's Institute for the purpose of adoption. On the same day, June 2, 1954, the probate judge entered an order "that this case be adjourned indefinitely but that the children remain under the jurisdiction of the court until further action is taken." It does not appear from the records before us that the probate judge entered any order on the petition of Marie Harmsen, except to postpone the cause indefinitely.

We are of the opinion that the petition filed by Marie Harmsen does not comply with the statutory requirement. The petition does not allege that the children were neglected; that the parents failed or refused to provide them necessary support; that the children were abandoned, or that the home was unfit or improper by reason of cruelty or drunkenness, criminality or depravity as required by statute. Service upon Marie Harmsen was a necessary step in order that the court could have jurisdiction of the cause. The court in the instant case did not acquire jurisdiction of the cause and his order postponing the cause indefinitely was a nullity.

The record does not show by what means the 2 oldest children came into the custody of defendants. There is no lawful order in the record before us granting custody of the 2 minor children to defendants. Under such circumstances habeas corpus is the proper remedy to obtain custody of a minor from an unlawful detention. See *In re Adams,* 214 Mich 199.

When the cause came on for trial in the circuit court the trial court found as a fact that the father was a fit person to have custody of the 2 minor children and that there was no evidence to the contrary. We hold that the proceedings in the probate court did not give that court jurisdiction to issue any order granting possession of the children to defendants and that habeas corpus proceedings in the circuit court is a proper forum to test the validity of the proceedings in the probate court.

The order of the circuit court is affirmed, with costs to plaintiff.

DETHMERS, C. J., and KELLY and CARR, JJ., concurred with SHARPE, J.

EDWARDS, J. (*for reversal*). This case involves the lives of 2 children. Much misfortune has already befallen them. There is grave danger that legal errors of the court charged by our Michigan Constitution with the duty of helping them may occasion them still more trouble.

Before we deal with the technical legal problems with which we must be concerned on this appeal from a grant of custody to a father on a writ of habeas corpus, there are several undisputed facts which cry out to be added to our consideration of the ultimate result.

1. On June 19, 1953, the father of David and Ruth Harmsen, and petitioner herein, was declared men-

tally incompetent by the Berrien county probate court and committed to the Kalamazoo State hospital wherein he was diagnosed as seriously mentally ill by the medical superintendent, and wherein he remained until June 30, 1955.

2. On May 20, 1954, Marie Harmsen, the mother of the 2 children, filed a petition alleging that she was unable to control or care for these 2 children (and 1 other not the subject of our immediate concern) and asking the probate court to take jurisdiction of them; and on that same day she likewise signed a consent to the adoption of all 3 of her children.

3. It likewise appears plain and undisputed in this record that the 2 children, David and Ruth, were left with the probate court of Berrien county by their mother and were taken into its jurisdiction by a formal order, and remained under its care without any attempt on the part of either parent to pick up the burdens of parenthood until May 1, 1956, 2 years later, when the father and present petitioner filed a petition in the probate court for the return to him of David and Ruth.

Thus it appears beyond dispute from this record that the children were for 2 full years without any vestige of parental support or control. It also appears that the assumption of jurisdiction by the probate court of their care was actively sought by the mother and has never been disputed by her, and that the court's care of these children was known to and agreed to by the father up to the point of the petition for return.

Nonetheless the circuit court below (and my Brother in his affirmance of the circuit judge) holds the probate court never had jurisdiction because (1) the petition upon which the probate court based its jurisdiction over these 2 children was defective in that it did not comply with statutory requirements;

(2) that no service of process was had upon the mother of the children prior to hearing; and (3) that the order taking jurisdiction was improperly drawn, and, hence, invalid.

We turn now to these 3 technical issues upon which the question of jurisdiction turns.

In my view, the petition upon which the court founded its jurisdiction recited ample facts under the juvenile code for a valid order assuming jurisdiction. The statute does not prescribe any particular words. The petition said a great deal in a few lines:

"In the Matter of the Petition Concerning
  "Roger Allen Harmsen, born 11–12–46—Grand
      Rapids;
  David Leroy Harmsen, born 11–4–45—Grand
      Rapids;
  Ruth Etta Harmsen, born 8–15–49—Niles. Minor.

"I, Marie Harmsen, respectfully represent that I reside R.F.D. of Berrien Springs in said county, and make this petition as mother.

"I further represent that said children are residents of Berrien Springs in Berrien county, and are now residing with and under the custody and control of myself and they were born on 11–12–46; 11–4–45 and 8–15–49 respectively.

"I further represent upon information and belief that said children are beyond my control. I am not physically well enough to cope with them. I know that they would be better off were they placed in good adoptive homes. Their father is in Kalamazoo State hospital and I have been told that he is incurable. The children need security that I cannot give them.

"I further represent that the names, relationship, ages and residences of nearest of kin and guardian of said child ——, as I am informed and believe, are as follows:

| NAME | RELATIONSHIP | AGE | RESIDENCE |
|------|--------------|-----|-----------|
| Gordon Harmsen | father | | Kalamazoo State hospital |
| Marie Harmsen c/o Mrs. Burton Guthrie | mother | | R.F.D., Berrien Springs Berrien Center, Tel. Eau Claire 2367 |

"I therefore, pray that the juvenile court take jurisdiction of said children.

/S/ Marie Harmsen"

Thus the petition placed before the probate court the facts that the father of these children was in a mental institution, that the mother had been advised he was incurable, that she herself was physically too ill to control, cope with them, or give them the security which they needed. A search of the probate court file indicates that there is no record of any subsequent effort to see, care for, or seek the return of the children by the mother at any subsequent stage of this proceeding.

The Constitution of the State of Michigan (1908), art 7, § 13, grants to the probate courts of this State "original jurisdiction in all cases of juvenile delinquents and dependents." The probate code of this State vests in the juvenile division of the probate court

"(b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county

"(1) Whose parent or other person legally responsible for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical or other care necessary

for his health, morals or well-being, or who is abandoned by his parents, guardian or other custodian, or who is otherwise without proper custody or guardianship." CLS 1956, § 712A.2 (Stat Ann 1955 Cum Supp § 27.3178[598.2]).

The requirements of the petition are spelled out by statute as follows:

"The petition shall be verified and may be upon information and belief. It shall set forth plainly the facts which bring said child within the provisions of this chapter, and shall state (1) the name, birth date, and residence of the child; the names and residence: (2) of the parents; (3) of his legal guardian, if there is one; (4) of the person or persons having custody or control of the child; and (5) of the nearest known relative if no parent or guardian can be found. If any of the facts herein required are not known to the petitioner, the petition shall so state." CL 1948, § 712A.11 (Stat Ann 1955 Cum Supp § 27.3178 [598.11]).

A reading of these sections convinces this Court that facts are alleged in the petition quoted which, if sustained at hearing, would warrant a finding that these children had been abandoned by their parents or guardian, or were otherwise without proper custody or guardianship.

As to the issue pertaining to service of summons and notice of hearing on the above petition, the file discloses personal service upon the father, the petitioner here, at Kalamazoo State hospital. It likewise discloses that on May 20th the probate judge wrote the superintendent of the Kalamazoo State hospital stating to him the essence of the mother's petition, and asking him to ascertain the father's reaction thereto. The probate court file further discloses a letter from Dr. R. A. Morter, medical su-

perintendent of Kalamazoo State hospital, to the probate judge *re* Gordon Harmsen, as follows:

"May 21, 1954

"Hon. Malcolm Hatfield
 Judge of Probate
St. Joseph, Michigan        *Re:*   Gordon Harmsen

*"Dear Judge Hatfield:*

"I have your letter of May 20th and wish to inform you that Gordon Harmsen was admitted to this hospital on June 19, 1953. He is suffering from a very serious type of mental trouble. He has shown no improvement since his admission to this hospital. He constantly talks about getting out of the hospital and earning money to support his children. We are of the opinion that he is not well enough to be released from the hospital and it probably will be a long long time before he will show improvement. If he ever recovers sufficiently to be released from the hospital, he is quite likely to have a recurrence of his mental trouble.

"Yours very truly,
/S/ R. A. MORTER
"R. A. Morter, M.D."

Subsequent to receipt of this letter, the probate judge entered an order for service by registered mail upon Gordon Harmsen through Dr. Morter at Kalamazoo State hospital, and the record discloses a proof of such service and also, upon authorization of the medical superintendent, upon Mr. Harmsen personally on May 27, 1954, by one Jack D. Emmons. The file next discloses a letter from Mr. Harmsen to the probate judge which clearly revealed his understanding of the nature of the proceedings and his agreement at least to a limited degree:

"Thu. May 27, 1954
Gordon L. Harmsen
Kalamazoo 43 F
Box A, Mich.

"Judge of Probate
Malcolm Hatfield
St. Joseph, Mich.

*"Dear Sir:*

"I received the court order today regarding my children Roger Allen Harmsen, David Leroy Harmsen and Ruth Etta Harmsen. I feel that the children need the security of a home and parents to develop normally, they need love and affection.

"It would be my desire to be there if for no other reason then to again see my wife and my children as I have not seen them these many months. Neither have I heard how they were for my wife would not even mention them in her letters, which were of a hard nature.

"I would like to publicly apologize before the court for what I said of her, in her presence. Then I was not in control of my emotions and what I said was by impulse. I never seen or knew it could happen. Now I am in control of my emotions and am not impulsive. Neither do I regret the results. One must learn. I realize I overworked.

"Could you transfer the guardianship to Bro. Ford Lewis or Mrs. Ruth Pearson. My wife is not intent on any good coming to me. I believe a guardian should be ones friend.

                    "Respectfully,
                    /S/ GORDON HARMSEN"

The next items in the probate court file are 2 entries indicating attempts of service upon Mrs. Harmsen, dated May 27th and May 28th, the last of which apparently resulted in service upon one Mrs. Burton Guthrie, at Berrien Center, which the summons listed as the last known address of the mother.

In addition to the above, an attorney, Donald J. Dick, appeared for the mother, Marie Harmsen, in the subsequent hearing upon this petition and filed a waiver of notice and consent on behalf of her.

Under proper circumstances, the probate code chapter on juveniles authorizes, in addition to personal service, service by registered mail or by publication. CL 1948, § 712A.13 (Stat Ann 1955 Cum Supp § 27.3178[598.13]). The code also provides for waiver of service of process or notice of hearing. CL 1948, § 712A.12 (Stat Ann 1955 Cum Supp § 27.3178[598.12]).

In this case, both parents plainly were informed of the purpose and nature of this proceeding. We note that the waiver referred to was signed by the mother's attorney rather than by her. While such a waiver, if unauthorized, might be attacked by the mother, we hold that the father, who was personally served, cannot now attack it collaterally. Under this record, we hold the waiver effective for purposes of jurisdiction.

The third claim of fatal defect in these proceedings pertains to the order entered by the probate judge on the petition which we have previously described, at the hearing held on June 2, 1954. Prior to the hearing, the probate judge had caused an investigation of the petition pertaining to these children to be made, as authorized by statute. CL 1948, §§ 712A.11, 712A.12 (Stat Ann 1955 Cum Supp §§ 27.3178[598.11], 27.3178[598.12]). The probate file discloses a full report based on that investigation, made by Frances M. Milton, the assistant county agent:

"Report of Asst. County Welfare Agent to:
    Hon. Malcolm Hatfield
        Probate Judge
"In the matter of:
    David Leroy Harmsen,        b   11–4–45
    Roger Allen Harmsen,        b   11–12–46
    Ruth Etta Harmsen,          b    8–15–49
    Petitions Dated May 29, 1953 and
                    May 20, 1954

    Parents:
Gordon Harmsen, Kalamazoo State Hospital
    Marie Harmsen, c/o Mrs. Burton Guthrie
                        Berrien Center

    "These children were first called to the attention
of this court on May 29, 1953 when a neighbor, Mrs.
Mary Ash of Berrien Springs, signed the following
petition:
    " 'The above named children are being abused by
their father, Gordon Harmsen. The father whips
the children until they are black and blue. He yells
and screams at the children. The mother told me
they didn't have enough to eat. Father works at the
Fan Company in Niles. The mother cans fruit and
that is all I have seen on their table. The teacher at
school said David took lunches from other children
at school, although they have practically broken him
of that, but the children are thin and undernourished.
The mother is very thin too. Mrs. Bennett of the
BSA asked me to sign a complaint and ask worker
to contact her. Also the police at Berrien Springs
said something should be done with the father of
these children.'
    "This family was referred to the family counsel-
ling service and later to the Bureau of Social Aid.
Prior to the father's final commitment at Kalamazoo,
he was apprehended by the sheriff department for
beating the children with a strap until they were
black and blue.
    "On May 20, 1954, the mother filed a petition alleg-
ing the following:

" 'Said children are beyond my control. I am not physically well enough to cope with them. I know that they would be better off were they placed in good adoptive homes. Their father is in Kalamazoo State hospital and I have been told that he is incurable. The children need security that I cannot give them.'

"On May 21st, R. A. Morter, superintendent of the Kalamazoo State hospital, wrote this court as follows:

" 'I have your letter of May 20th and wish to inform you that Gordon Harmsen was admitted to this hospital on June 19, 1953. He is suffering from a very serious type of mental trouble. He has shown no improvement since his admission to this hospital. He constantly talks about getting out of the hospital and earning money to support his children. We are of the opinion that he is not well enough to be released from the hospital and it probably will be a long long time before he will show improvement. If he ever recovers sufficiently to be released from the hospital, he is quite likely to have a recurrence of his mental trouble.'

"The mother appears to have no real mother love for these children and showed no concern about giving them up; in fact, she seemed to want to be rid of them.

"Recommendation: As these children are very much in need of security which neither parent is able to give them, I recommend that they be committed to the Michigan Children's Institute for the purpose of adoption.

/S/ FRANCES M. MILTON<br>"Frances M. Milton

"Dated: June 2, 1954        "Asst. County Agent"

At the hearing on June 2, 1954, the probate judge had this report before him, as indicated by the order he subsequently entered. He had before him also the sworn petition of the children's mother reciting the essential elements constituting neglect and de-

pendency. He had before him also the letter previously quoted from the father of the children indicating the need of the children for a home. This record does not disclose either prior to the hearing, or at the hearing, or in the 2 years subsequent to the hearing, any dispute of any essential fact alleged in the petition and sworn to by the mother, and substantiated by the county agent's report.

As we have seen above, service had been had upon the necessary parties and a sworn petition in proper form had been filed alleging the essential jurisdictional facts in a dependent and neglect proceeding under the probate code chapter on juveniles. The statutorily-authorized report of the county agent, based upon investigation of the facts alleged in the petition, in the absence of dispute over any jurisdictional fact, constituted a proper basis for the juvenile court's acceptance of jurisdiction. The probate code chapter on juveniles authorizes informal hearings. CL 1948, § 712A.17 (Stat Ann 1955 Cum Supp. § 27.-3178[598.17]). While jurisdictional facts must be established by sworn evidence where disputed, this Court has long held in juvenile proceedings that the formal taking of evidence is not required under the fact situation outlined above. *In re Broughton,* 192 Mich 418.

In the instant proceedings, it also appears that attorney Donald J. Dick appeared representing the mother, and as representative of the guardian of the estate of the father with prior advice to him of his intention to do so. Mr. Dick sought an order from the court adjourning the adoption proceedings until the father had time to secure representation of an attorney of his own choice.

The order entered at the June 2d hearing by the probate court judge takes on added significance with these additional facts:

"In the matter of David Harmsen
Roger Harmsen
Ruth Harmsen

"Petitions having been filed in said court concerning said juveniles and due notice thereof having been given as required by law, and it appearing to said court after a full investigation that the final disposition in this case should be postponed for further inquiry,

"It is therefore ordered, that this case be adjourned indefinitely but that the children remain under the jurisdiction of this court until further action is taken."

The probate judge did not, as required by statute, specify whether the children were taken in temporary or permanent custody (CL 1948, § 712A.20 [Stat Ann 1955 Cum Supp § 27.3178(598.20)]), or, as allowed by statute, specify the applicable disposition (CLS 1956, § 712A.18 [Stat Ann 1955 Cum Supp § 27.3178(598.18)]). Among the dispositions under this section is

"(c). Place the child in a suitable boarding home, which if a home of persons not related to said child, shall be licensed as provided by law."

The record reveals that this was what was done, and that David Harmsen was placed with Dr. and Mrs. Deane Fizzell, and Ruth Harmsen was placed with Mr. and Mrs. William Johnston. It appears that the Fizzells never sought any reimbursement from the county for their care of David. The file does not disclose any order signed by the probate judge in relation to David's placement there. The file does disclose, on September 1, 1955, an order from the probate judge, reciting:

"It appearing, that Ruth Harmsen, under the jurisdiction of this court, has been in a free boarding home for over a year pending final disposition,

"It now appears, that the boarding-home parents are requesting some reimbursement.

"It is therefore ordered, That the county pay Mrs. Wm. Johnston, R. #1, Benton Harbor $1 per day for the partial support of this child."

It is plain from the wording of the original order that the probate judge did not contemplate permanent custody or severance of parental rights, and has never up to this date undertaken to enter such an order.

We view the order of June 2, 1954, as an order taking jurisdiction over these children on the basis of facts of neglect and dependency alleged in the petition for purposes of temporary custody. As such, it was final and appealable.

We likewise view the order as defective and voidable (or subject to correction) on appeal for failure to meet the statutory requirements cited above.

We do not, however, consider the order void since in our view the probate court plainly had jurisdiction as to the children on the facts before him, and since he was authorized by statute to assume jurisdiction over the children concerned.

What we have said to this point would warrant the conclusion that, a return having been made before the circuit judge to the writ of habeas corpus indicating that the children were under the jurisdiction of the juvenile court by virtue of process issued by said court within its proper jurisdiction, the circuit judge should have remanded them to custody of the juvenile division of the probate court and dismissed the habeas corpus proceedings. The habeas corpus act provides, in part:

"It shall be the duty of such court or officer forthwith to remand such party, if it shall appear that he is detained in custody, either: * * *

"2. By virtue of the final judgment or decree of any competent court of civil or criminal jurisdiction." CL 1948, § 637.28 (Stat Ann § 27.2271).

See, also, CL 1948, § 637.8 (Stat Ann § 27.2251).

Up to this point in this opinion we have largely dealt with technical legal problems upon which the court below based its grant of custody of these 2 children to their father. More needs, however, to be said, for this case does not involve a criminal proceeding where the right of a person to freedom from restraint is at issue. What is sought here is the use of the writ of habeas corpus as a substitute for statutory appeal to review long past orders of the probate court or to gain a hearing *de novo* on the issues purportedly adjudicated therein.

For us to pry with legal diligence at the technical crevices in old cases which pertain to child custody and adoption matters could spring open a Pandora's box of troubles.

What is in danger of being overlooked in this legalistic approach to a habeas corpus proceeding is the cardinal principle of judicial concern for the welfare of the children involved. This has previously been a touchstone of this Court's decisions in all custody matters. As early as 1880, Justice Graves, for a Court including Justices Cooley and Campbell, gave us this admonition as to concern for the welfare of a·child in custody proceedings:

"In contests of this kind the opinion is now nearly universal that neither of the parties has any rights that can be allowed to seriously militate against the welfare of the child. The paramount consideration is what is really demanded by its best interests. It is doing no violence to what is taught by judicial experience to assume that the disputing parties will be more alive to the satisfaction of their own feelings and interests than to the true end of the inquisition; while the innocent subject of the contention

is utterly unable to speak or act for itself, and is in danger of being lost sight of in the strife for its possession. No other occasion can call more loudly for judicial vigilance in reaching for the exact truth, and in putting aside with an unsparing hand the mere technicalities of procedure." *Corrie* v. *Corrie,* 42 Mich 509, 510.

See, also, *In re Stockman,* 71 Mich 180; *In re Gould,* 174 Mich 663; *Martin* v. *Benzie Circuit Judge,* 200 Mich 549; *Liebert* v. *Derse,* 309 Mich 495.

In the last cited case, this Court reviewed a trial court's dismissal of a writ of habeas corpus brought by a father for the return of his child to him by his deceased wife's sister and her husband. No probate court jurisdiction or order was involved. The court, in examining the record to determine whether the best interests of the child had been protected, recorded this summary of the facts pertaining to the father (p 498):

"The testimony indicates that plaintiff and his present wife are substantial and respectable people. He is 43 years old, is regularly employed, and says that he is able to provide for the boy adequately. He owns and maintains his home, equipped with modern conveniences and located near a city park. He showed his affection for and interest in the boy by visiting him regularly while he was in defendants' care and in paying for his support for several years. His wife said that they had redecorated a room in their home and made it into a boy's room for Karl,"

and upheld the right of the father to the custody of the son.

Our factual situation as revealed by this record is materially different in ways which may well adversely affect the future of these children. We deal here with a petition from a father recently released from commitment to a mental institution. Such med-

ical prognosis as is revealed by this file indicates probability of recurrence. This file does not disclose any medical report upon his present mental status or the likelihood of recurrence of the former problem.

The probate court record does reveal that the petitioner in this case, in fact, had no home. His claim was that he was sleeping in a shed on the premises of what the exhibits disclose to be a most distinctly substandard dwelling occupied by a woman to whom he professed the intention of marriage when, as, and if, finally divorced from these children's mother.

While it is true that the record indicates that, with the approval of the probate court, a third child of these parents (a boy not the subject of our current controversy) has been allowed to reside with this lady after failure of previous placement attempts in relation to him, this fact alone is hardly conclusive as to the suitability of this for 2 additional children, one of whom was a girl of 6 years.

The record indicates likewise both unstable employment on the part of the father and complete lack of support in at least the preceding 3 years. While the mental commitment offers every explanation of failure of support for the period it continued, the record does not disclose any attempt on the part of the father to support the child who was being cared for at the expense of the county prior to his petition to the probate court for her return.

Most important of all, we are in danger of entering what may be interpreted as the final custody order with little, if any, evidence bearing upon the best interests of the children inasmuch as those interests are reflected by their adjustment in their successive homes and family groups.

The certified file from the probate court contains many indications of neglect of these 2 children prior to their present placements, and likewise many indi-

cations of great improvement therein. Typical of these is a letter from David's teacher:

"I have been very concerned since hearing that David Fizzell may be returned to the situation that he came from before he entered second grade in my room in Watervliet schools last year.

"In my teaching experience I have never had a child who was more maladjusted and nervous than David was at the beginning of the school year. He had almost no span of attention and never followed even the simplest direction. His troubled expression and frequent remarks about horrible experiences were heartbreaking. It was impossible for David to sit still long enough to do any work and he was unable to sit through a reading class. If we had had a special room in our schools David would have benefited by being in a smaller group and by having more individual attention and help with his many emotional problems. Each week there was a little improvement in his attitude and stability. It was about Christmas time that we realized at school that the affection and security that David was receiving in the Fizzell home was changing his attitude and personality. At the end of the year I felt that David was one of the best workers in my room and was becoming better adjusted.

"In my teaching experience I have never known better parents than the Fizzells. There is so much love, guidance and care in their home."

This record does not indicate that the habeas corpus proceedings included the testimony of school authorities or the school records of these children in their prior placement with their parents and their subsequent placement with defendants. The record does, unfortunately, disclose that the court declined the suggestion of defendants that the court interview the children themselves.

Children are not chattels to which legal title may properly be determined by a technical writ. Habeas

corpus, when it involves the custody of a child, is inevitably essentially equitable in its nature. *In re Leu*, 240 Mich 240. The circuit court, in determining a disputed child custody case, has both the power and the duty to weigh all factors which bear upon the welfare of the children whose fate he must determine. In a fact situation more similar to our present situation than any other case called to our attention, and where there were no probate proceedings at all, this Court affirmed a denial of the petition for return to the parents, saying:

"However, the welfare of the child is our sole consideration and we will not base our decision upon this technical ground. The Seeneys by their own admission have contributed nothing to the support of the child for almost 5 years and have visited him only on rare occasions during that period. To a large extent they have abandoned him. The child has grown up in the care of the Daveys and regards them as his parents. The interests of the boy would not be served by a change in custody at this late date." *In re Seeney*, 330 Mich 55, 59.

We are not unmindful of the fact that a father whose parental rights have not been legally severed should be given society's assistance at every point in his effort to re-establish a proper home for the children for whose care he has the right and duty to provide.

On the basis of this record, however, we think it is essential to the future well-being of the children for the court to require this father, in seeking the return of his children, to make a showing of reasonable continuity of mental stability, of capacity for steady employment, and of the existence of a legally-constituted family and home wherein there is a reasonable possibility of proper care for his children.

My Brother relies upon *In re Adams*, 214 Mich 199, in affirming the trial court's order of custody

based on these habeas corpus proceedings. This case does indeed indicate that the proper custody of a child is in its father absent a strong showing of unfitness. But the holding in the case was denial of the writ of habeas corpus on the grounds of a proper forum for trial of the issue of fitness in the court below.

In this matter, a petition for return of these children may be filed by the father in the juvenile division of the probate court at any time. CL 1948, § 712A.21 (Stat Ann 1955 Cum Supp § 27.3178 [598.-21]). If such a petition, upon full hearing at the probate court level, were unjustly denied, appeal to the circuit court under the terms of the probate code chapter on juveniles, and subsequently to this Court, is available. CL 1948, § 701.36 (Stat Ann 1943 Rev § 27.3178[36]).

For the reasons stated, we believe the writ of habeas corpus should have been dismissed and the children remanded to the custody of the juvenile division of the probate court for the entry of proper placement orders and the determination of any proceedings pertaining to custody which may be initiated.

The judgment of the circuit court is reversed. Costs to appellants.

SMITH, VOELKER, and BLACK, JJ., concurred with EDWARDS, J.