IN THE MATTER OF KATHREN ADRIANSON AND PURCELL
ADRIANSON

Docket No. 52785. Submitted February 11, 1981, at Lansing.—Decided
April 9, 1981.

The Ingham County Department of Social Services filed a petition
in the Ingham Circuit Court alleging the neglect of Kathren
Adrianson and Purcell Adrianson by their mother, Jan Rob-
bins, and seeking removal of the children from their home. The
petition was authorized, and the children were removed. At the
initial hearing, respondent admitted petitioner's allegations.
The probate court adjudged the children temporary wards of
the court and ordered respondent to comply with certain condi-
tions pending final disposition. Subsequently, the department
filed a petition for a rehearing, requesting that the children be
made permanent wards of the court. During the course of the
hearing respondent agreed to admit to the allegations in the
petition for permanent wardship with the understanding that
the order to make the children permanent wards of the court
would not take effect for 90 days. At that time respondent was
to be given an opportunity to demonstrate compliance with
certain conditions, and, if successful, the order would be set
aside. Respondent's admissions were accepted. At a later hear-
ing, the probate court found that respondent had not complied
with all of the conditions and entered an order of permanent
wardship. Respondent appealed to the Ingham Circuit Court
which affirmed the order of the probate court, Jack W. Warren,

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur 2d, Judgments §§ 641, 653.

[2] 5 Am Jur 2d, Appeal and Error § 829.
20 Am Jur 2d, Courts §§ 90, 92.

[3] 20 Am Jur 2d, Courts §§ 32, 90, 104.

[4-7] 20 Am Jur 2d, Courts § 104.

[7] 24 Am Jur 2d, Divorce and Separation § 824.
42 Am Jur 2d, Infants §§ 16, 17.
Failure to provide medical attention for child as criminal neglect.
12 ALR2d 1047.

[8] 24 Am Jur 2d, Divorce and Separation § 824.

[9] 24 Am Jur 2d, Divorce and Separation § 809.

[10, 11] 59 Am Jur 2d, Parent and Child §§ 26, 42.

J. Respondent sought leave to appeal to the Court of Appeals. Petitioner, claiming lack of notice of respondent's application for leave to appeal, moved for and briefed certain matters including a motion for rehearing. The Court of Appeals granted petitioner's motion for rehearing and respondent's application for delayed appeal and invited the parties to submit briefs on the issues of whether the probate court exceeded its jurisdiction in ordering temporary wardship and in terminating respondent's parental rights. *Held:*

1. The Court of Appeals has jurisdiction to review the allegations in the original petition submitted to the probate court but not evidence later introduced which formed the basis of the court's disposition of the matter to determine whether sufficient facts were alleged to allow jurisdiction to attach in the probate court.

2. The allegations in the petition, admitted by respondent, were sufficient to support the probate court's assumption of temporary jurisdiction over the children.

3. The record reveals that sufficient evidence was presented to support the court's findings upon which its order of permanent wardship was based.

4. The probate court did not err in concluding that respondent did not demonstrate compliance with the conditions precedent to setting aside its order of permanent wardship. Its decision to make unconditional the permanent termination of respondent's parental rights did not constitute an abuse of discretion.

Affirmed.

1. JUDGMENTS — COLLATERAL ATTACK — VALIDITY OF JUDGMENTS.

Errors or irregularities in a proceeding, once jurisdiction has attached, may render a judgment erroneous and subject to be set aside in a proper proceeding but will not render the judgment void; until set aside, the judgment is valid and binding and cannot be collaterally attacked.

2. COURTS — JURISDICTION.

Error in the determination of questions of law or fact upon which a court's jurisdiction is based in a particular case is error in the exercise of jurisdiction where the court has general jurisdiction of the cause and person.

3. COURTS — PROBATE COURTS — JURISDICTION — APPEAL — COLLATERAL ATTACK.

An erroneous exercise of jurisdiction by a probate court may be

challenged by a direct appeal but is not subject to challenge years later by collateral attack.

4. COURTS — PROBATE COURTS — JURISDICTION — STATUTES.

An erroneous exercise of jurisdiction by a probate court in a case where a rehearing is mandatory during a period of temporary jurisdiction over a child may be challenged at the rehearing (MCL 712A.19; MSA 27.3178[598.19]).

5. COURTS — PROBATE COURTS — JURISDICTION — VALIDITY OF JUDGMENTS.

Jurisdiction should not attach in a probate court absent sufficient allegations in a petition, and where such allegations are not present a judgment of the court may be challenged as a nullity and void *ab initio* by either direct or collateral review.

6. COURTS — PROBATE COURTS — JURISDICTION — PARENT AND CHILD — STATUTES.

A probate court may assume temporary jurisdiction over a child under age 17 whose parent or guardian, when able to do so, neglects or refuses to provide proper or necessary support, education, health or moral care, or who is deprived of emotional well-being, abandoned by his parents, is otherwise without proper guardianship, whose home environment is unfit, or whose mother is unmarried and without adequate provision for care and support (MCL 712A.2[b]; MSA 27.3178[598.2][b]).

7. COURTS — PROBATE COURTS — PARENT AND CHILD — ABANDONMENT OF CHILDREN — STATUTES.

A probate court may declare a child deserted and abandoned by his parent or guardian where, in its opinion, such parent or guardian has failed to make regular and substantial efforts to support or to communicate with the child or is unable to provide a fit home for the child by reason of neglect.

8. PARENT AND CHILD — ABANDONMENT OF CHILDREN — EVIDENCE — STATUTES.

Failure of a parent and guardian to provide support for or to communicate with a child for a period of at least six months is presumptive evidence of the parent's or guardian's intent to abandon the child (MCL 712A.19a[b]; MSA 27.3178[598.19a][b]).

9. COURTS — PROBATE COURTS — CUSTODY HEARINGS — EVIDENCE.

Allegations made in temporary custody hearings in a probate court which are admitted by a respondent may be considered at a permanent custody hearing.

10. Courts — Probate Courts — Custody Hearings — Statutes.

A probate court in determining the custody of a child is required
to consider allegations against the respondent parent as well as
the policy of law to maintain a child's custody with his natural
parents when at all possible (MCL 712A.1; MSA 27.3178[598.1]).

11. Courts — Probate Courts — Custody Hearings.

A parent seeking to regain custody of his child has the burden of
proving that he has complied with previous conditions specified
by a probate court necessary to retain custody, provided the
state has met its burden of proof during previous hearings.

*Peter D. Houk,* Prosecuting Attorney, and
*Charles M. Sibert,* Chief Appellate Attorney, for
petitioner.

*Michael J. Kistler,* for respondent.

Before: Cynar, P.J., and J. H. Gillis and Allen,
JJ.

Cynar, P.J. Respondent appeals by leave
granted on November 25, 1980, after the Ingham
County Circuit Court had affirmed a probate court
order making two of her children permanent
wards of the court.

Respondent is the mother of Kathren and Pur-
cell (Butch) Adrianson and two other children,
David Gibbs and James Adrianson. She is di-
vorced, and her former husband's whereabouts are
unknown.

On January 8, 1977, Joyce Lamar of the Depart-
ment of Social Services filed a petition alleging
neglect of the Adrianson children. The petition
was authorized, and the children were removed
from the home, pending final disposition of the
case. At a hearing May 6, 1977, respondent admit-
ted the allegations in the petition, and the three
Adrianson children (Kathren, Purcell, and James)
were adjudged temporary wards of the court. The

court, on the same day, issued an order directing respondent to do several things, including cooperating with a therapist and finding a suitable apartment.

On May 19, 1978, respondent's Department of Social Services caseworker, Ellen McKay, petitioned for a rehearing, requesting that Purcell and Kathren be made permanent wards of the court.

A hearing was held on June 15 and 16, 1978. On the first day, David Rolfe, determined to be an expert in family dynamics, described his weekly meetings with the minor children and offered his opinion that the best interests of the children dictated that they be made permanent wards of the court. Elton Kirk, determined to be an expert in clinical psychology, described his counseling sessions with respondent. He indicated that she was unwilling to work with him and that it would be difficult for her to change her attitudes and home environment.

At the beginning of the second day of the hearing, the prosecutor announced that the parties had reached an agreement by which the respondent would admit the allegations in the petition for permanent wardship, but that an order for wardship would not take effect for 90 days, at the end of which respondent would have an opportunity to demonstrate compliance with 14 conditions. If she met that burden, the order for permanent wardship was to be set aside; if not, it was to take immediate effect.

Respondent was advised of her rights and pleaded "no contest". Ellen McKay took the stand and stated that the allegations in the petition were true to the best of her knowledge. The plea was accepted.

Respondent attempted to demonstrate compli-

ance with the 14 conditions at a hearing held on November 22, 1978. She stated that she had done her best to comply with these conditions. Respondent testified that she had obtained adequate housing and had lived there alone. She described her work as an employee, then as a partner, in a trash-hauling business. Respondent said that she had paid her rent monthly, and she exhibited rent receipts. She indicated, however, that her caseworker had told her not to give the receipts to the caseworker.

Respondent testified that she had seen a credit counselor and had filled out a budget form and that the counselor had told her that future sessions were unnecessary. She said she had no outstanding debts and described business and personal savings accounts that she had established after the earlier hearing. She also testified that after her probation officer and her caseworker set up appointments with a psychotherapist, she kept all scheduled appointments. She produced a letter from her therapist.

Respondent said she had violated no laws and had received no nonparking traffic tickets. She said her contact with her children had been limited to written communication. She described her efforts to make regular contacts with her caseworker.

Respondent called as a witness her business partner, Melvin Cobb, who described their work and earnings.

The prosecution called McKay to the stand. She denied telling respondent that she would not accept rent receipts. She also said that respondent had not made weekly contacts. McKay's report of contacts with respondent was admitted into evidence.

The probate court reviewed the evidence and found that respondent had not complied with two conditions: that she give rent receipts to her caseworker and the condition regarding psychotherapy. The court found that respondent had complied, partly complied, or that there was no reason to believe she had not complied with the remaining conditions.

The order of permanent wardship went into effect under the agreement. Respondent appealed to the Ingham County Circuit Court, and, on July 14, 1980, the circuit court affirmed the order.

Respondent sought leave to appeal in this Court, apparently without notice to the prosecution. This Court granted leave in an order dated October 22, 1980.

On October 24, 1980, the prosecution filed several documents: (1) a motion for rehearing of respondent's delayed application for leave to appeal, (2) a motion for stay of the October 22 order of the Court of Appeals, (3) a motion to affirm the orders of the circuit and probate courts or to dismiss the appeal, (4) a motion for immediate consideration of its motions, (5) an answer to the delayed application for leave to appeal, (6) a brief in opposition to the late application for leave to appeal, and (7) a brief in support of its motion to affirm.

This Court granted the motion for rehearing and application for delayed appeal, inviting the parties to brief the following issues:

"1. Did the probate court exceed its jurisdiction in ordering the children in its temporary wardship in 1971 *[sic]?* See, *In re Kurzawa,* 95 Mich App 346, 353 (1980).

"2. Did the probate court exceed its jurisdiction in terminating the parental rights of defendant-appellant in her children?"

We must first decide whether this Court has the authority to review the propriety of the probate court's 1977 decision to take the minors into temporary wardship after respondent admitted the allegations in the petition therefor, where respondent did not appeal that decision at any time and asserted that the probate court lacked jurisdiction only after this Court ordered the issue briefed.

One line of cases holds that an erroneous assumption of jurisdiction over a child renders the court's actions void *ab initio* and thus subject to attack at any time. In *In re Kurzawa,* 95 Mich App 346, 357; 290 NW2d 431 (1980), this Court found that the probate court had erred in assuming jurisdiction when no petitions that were filed alleged parental neglect. This Court held that the probate court proceedings were void *ab initio.* Similarly, in a habeas corpus action, our Supreme Court permitted a collateral attack on an order terminating parental rights on the ground that the probate court had erroneously assumed jurisdiction. *Fritts v Krugh,* 354 Mich 97; 92 NW2d 604 (1958). See also *In re Plummer Estate,* 42 Mich App 603, 607; 202 NW2d 429 (1972).

The strong dissents in *Fritts* point out a flaw in this analysis. Justices Smith and Black each applied the general law regarding jurisdictional matters to reach a result different from that arrived at by the majority. They recognized the distinction, discussed in *Buczkowski v Buczkowski,* 351 Mich 216; 88 NW2d 416 (1958), between the erroneous exercise of jurisdiction and the lack of jurisdiction, and they found that when a probate court errs in exercising its jurisdiction, the proceedings are not void *ab initio,* but are voidable by attacking the decision on direct appeal. The distinction between erroneous exercise of jurisdiction and lack of juris-

diction was best explained in a Corpus Juris passage quoted in *Jackson City Bank & Trust v Fredrick,* 271 Mich 538, 545-546; 260 NW 908 (1935):

" 'Want of jurisdiction must be distinguished from error in the exercise of jurisdiction. Where jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked. Error in the determination of questions of law or fact upon which the court's jurisdiction in the particular case depends, the court having general jurisdiction of the cause and the person, is error in the exercise of jurisdiction. Jurisdiction to make a determination is not dependent upon the correctness of the determination made.' 33 CJ, pp 1078, 1079."

This reasoning was applied in *Buczkowski, supra,* to bar a collateral attack on an erroneous exercise of jurisdiction. Similarly, in *Harmsen v Fizzell,* 354 Mich 60, 63; 92 NW2d 631 (1958), adopting the reasoning in an earlier opinion in the same case, 351 Mich 86, 93-111; 87 NW2d 161 (1957), the Court found the erroneous exercise of jurisdiction over a child to be voidable, but not void, and not subject to collateral attack. See also *Banner v Banner,* 45 Mich App 148, 152-155; 206 NW2d 234 (1973). We note that the *Buczkowski-Harmsen* analysis was not discussed in the recent case of *In re Kurzawa, supra.*

Petitioner suggests that the *Fritts* opinion is not precedent as the controlling statute was amended after *Fritts* was decided to provide that an application for delayed appeal from an order of the juvenile division shall be filed within six months

after the entry of the order. MCL 600.867; MSA 27A.867. Petitioner argues that this provision for a limited appeal time would be mere surplusage if *Fritts* were to have continuing validity.

We disagree. Certainly a parent may challenge the specific disposition of a case within the period allowed for direct appeal, thus giving some force to the amendatory language. However, should a parent wish to attack the underlying assumption of jurisdiction, it does not appear that this amendment alone would bar him or her from doing so under the *Fritts* analysis.

Petitioner also contends that *Fritts* was wrongly decided and that an erroneous exercise of jurisdiction is voidable by attack on direct appeal, but not void. Petitioner's argument is persuasive. Where the probate court erroneously exercises its jurisdiction, the error is analogous to a mistake in an information or in binding over a criminal defendant for trial. Such an error can, of course, be challenged in a direct appeal. It cannot, however, be challenged years later in a collateral attack. If such a delayed attack were always possible, decisions of the probate court would forever remain open to attack, and no finality would be possible.

In probate cases, where rehearings are mandatory during a period of temporary jurisdiction over a child, the erroneous exercise of jurisdiction may be challenged at any rehearing. MCL 712A.19; MSA 27.3178(598.19). A parent may petition for a rehearing within three months of an order terminating parental rights or may petition at any time the child is under the jurisdiction of the court. MCL 712A.21; MSA 27.3178(598.21). Furthermore, the probate court may enter an order for supplemental disposition at any time the child is under its jurisdiction. MCL 712A.21; MSA

27.3178(598.21). These statutory proceedings allow ample time for review of the assumption of jurisdiction in most cases.

In *In re Kurzawa, supra,* this Court held that the probate court's error in assuming jurisdiction rendered that court's proceedings void *ab initio. Id.,* 357. The Court considered that none of the petitions filed in the case alleged the type of neglect contemplated by MCL 712A.2; MSA 27.3178(598.2) and that even if such allegations had been adequate, the evidence presented was clearly insufficient to establish that termination of parental rights was warranted. The Court therein may have painted with too broad a brush as it appears that examination of the petition alone may be all that is necessary to determine whether jurisdiction exists. *In re Mathers,* 371 Mich 516, 528-529; 124 NW2d 878 (1963). What the Court in *In re Kurzawa* really may have meant was that the trial court's *exercise* of jurisdiction was erroneous, as opposed to the court's *lacking* jurisdiction. Thus, the Court may have improperly concluded that the probate court proceedings were void *ab initio,* for in such case they were merely voidable upon attack on direct appeal. In *In re Kurzawa,* the result can be justified because it was clear that plaintiff had failed to meet its burden of proof which, in turn, would support the trial court's *exercise* of jurisdiction in that case and because the defendant parents challenged that exercise of jurisdiction on direct appeal. However, if the Court rested its decision solely on the fact that the allegations in the plaintiff's petition were insufficient, then its conclusion that the proceedings were void *ab initio* was correct under *In re Mathers, supra.*

We believe that the *In re Kurzawa* opinion was

overbroad. After *Fritts, supra,* the Supreme Court examined the sufficiency of the petitions to determine whether the probate court had jurisdiction over a case. *In re Mathers, supra.* Until sufficient allegations are made in a petition, jurisdiction should not attach in the probate court. It is possible, therefore, to attack the probate court's adjudication as a nullity and void *ab initio* if the necessary allegations are not present on either direct or collateral review. *Buczkowski, supra.* This limited inquiry would avoid the necessity in all cases of determining whether the probate court erred in making factual determinations regarding these allegations.

We conclude that this Court has jurisdiction to examine the 1977 petition to determine only whether it alleged sufficient facts that would allow jurisdiction to attach in the probate court. This limited inquiry, which is not being made in a direct appeal, must not consider the evidence that was introduced at the hearing on the petition and which formed the basis of the probate court's disposition of the matter.

Next, we must decide whether the probate court erred in assuming jurisdiction over the Adrianson children in 1977, when the petition alleged neglect, lack of medical care, and lack of food and the respondent admitted these portions of the petition.

Respondent argues that, while respondent admitted the allegations in the petition, there must still be a determination as to their truth and the petition must allege sufficient facts for the probate court to have jurisdiction. She claims that the allegations and the facts admitted were insufficient to confer jurisdiction.

Moreover, she argues that the probate court took jurisdiction under the guise of neglect, even

though neglect was not the true basis for the court's decision and that taking jurisdiction therefore violated respondent's rights.

Petitioner argues that the admitted petition alleges neglect and provides a factual basis to support the allegation. The admissions, later found to be true, constitute clear and convincing evidence, sufficient to have allowed the probate court to take the minors into temporary custody.

The petition filed January 8, 1977, alleged violations of MCL 712A.2(b)(1), (2); MSA 27.3178(598.2)(b)(1), (2) by stating that the mother was incarcerated, that the mother had called the Department of Social Services stating that she was out of food and was unable to buy fuel oil, that there was debris and garbage collecting on the front porch of the house, that the children had not been attending school because the mother had not been getting them up, and that one child had scabies, then impetigo, without receiving adequate medical care. The petition further alleged that the children had not been dressed properly when taken into custody, that respondent was a lesbian, and that respondent's children may have witnessed a fight between respondent and her lover.

The probate court stated in its March, 1977 order making respondent's children temporary wards of the court that respondent admitted the allegations in the petition as amended. The amended petition still alleged that:

(1) Respondent was incarcerated after having been arrested for writing bad checks.

(2) Respondent had called the Department of Social Services on the day of her arrest and stated that she was out of fuel and was unable to buy fuel oil.

(3) Housing conditions were inadequate on the

day of respondent's arrest: old clothes and pieces of broken furniture (but not garbage) were on the front porch and a garbage bag was used in place of a door window.

(4) There were continuing problems with the children's school attendance.

(5) One child had been sent home from school with scabies in 1976, and his prescription was not filled for 16 days. The same child had impetigo and had not received medical attention at the time of the petition.

(6) A child—not the subject of this petition—was in a Texas youth home and was unable to get along with the respondent.

(7) Respondent's house had only three bedrooms and was unable to accommodate people other than the family.

Allegations relating to the children's improper dress and respondent's lesbian relationship were deleted. While respondent argues that the underlying reason for the court's assumption of jurisdiction was respondent's sexual preference, this allegation was deleted from the amended petition. This Court determines only whether the grounds alleged support a taking of jurisdiction.

A probate court may assume temporary jurisdiction over any child under age 17:

"(1) Whose parent or other person legally responsible for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical or other care necessary for his health, morals, or who is deprived of emotional well-being, or who is abandoned by his parents, guardian or other custodian, or who is otherwise without proper custody or guardianship; or

"(2) Whose home or environment, by reason of ne-

glect, cruelty, drunkenness, criminality or depravity on the part of a parent, guardian or other custodian, is an unfit place for such child to live in, or whose mother is unmarried and without adequate provision for care and support." MCL 712A.2(b); MSA 27.3178(598.2)(b).

The allegations in the petition establish that the medical care of the children was inadequate. Closer questions are involved in finding that the home was unfit—debris on the front porch does not seem to render a home uninhabitable. While respondent stated that she had no food or money to buy fuel oil, she made these statements to the Department of Social Services in an attempt to get aid, and there is no indication whether help was or was not provided.

The fact that the children had school attendance problems lends support to a finding of inadequate care. The fact that respondent was unable to get along with another child would seem to be irrelevant. There was no indication of why this was so, whether a personality conflict or mistreatment was the cause. If mistreatment was involved, this allegation would be relevant. *In re LaFlure,* 48 Mich App 377, 392; 210 NW2d 482 (1973). In the absence of some additional information that would make this allegation relevant to a determination of whether the minors in the instant case were neglected, this allegation should not have been considered by the probate court.

The mother's incarceration for a short period of time is a valid consideration for the court, as incarceration would necessarily remove the mother from the home. While the mother did arrange to have a friend care for the children during this period, the petition alleges that the friend's children had been removed from her custody.

We find that the allegations, which were admitted by the respondent, were adequate to support the probate court's taking of jurisdiction over the children.

Next, respondent argues that the probate court exceeded its jurisdiction in terminating respondent's parental rights.

The petitioner alleged, in the petition dated May 19, 1978, that permanent custody of the children should be taken by the court because respondent had violated MCL 712A.19a(a), (d), (e), (f); MSA 27.3178(598.19a)(a), (d), (e), (f). The petition was amended by the probate court to include only subsections (b) and (e), which provide that parental rights may be terminated where:

"(b) The child is left with intent of desertion and abandonment by his parent or guardian in the care of another person without provision for his support or without communication for a period of at least 6 months. The failure to provide support or to communicate for a period of at least 6 months shall be presumptive evidence of the parent's intent to abandon the child. If, in the opinion of the court, the evidence indicates that the parent or guardian has not made regular and substantial efforts to support or communicate with the child, the court may declare the child deserted and abandoned by his parent or guardian.

\* \* \*

"(e) The parent or guardian is unable to provide a fit home for the child by reason of neglect."

Subsection (b) was included in reference to the minors' father and factual allegations that the father had abandoned the children were also included in the amended petition. The sole remaining ground for termination of respondent's parental rights is subsection (e).

Testimony was taken on the morning of June 15, 1978, from David Rolfe and Elton Kirk, two expert witnesses. The following day, the prosecution announced an agreement had been reached. The prosecutor described the agreement as follows:

"It's my understanding that the respondent would admit to the petition requesting permanent wardship that the entry or execution of this order would be delayed for a period of 90 days following the respondent's release from jail which I believe is going to be August 24th of this year. That we have compiled a list of conditions which we feel are essential to prevent the entry of this order and that we then made a list or indicated various things, various conditions and that if the respondent can establish or can demonstrate that these conditions have been complied with that this Court would not enter the order of permanent wardship."

Respondent stated that she wished to plead "no contest" to this petition.

Respondent now asserts that the factual basis that was elicited was inadequate to support the plea. Evidence in support of the plea included the experts' testimony and that of Ellen McKay, the caseworker.

David Rolfe was qualified as an expert in family dynamics. His testimony was based on his consultations with the children, which took place regularly for approximately one year. Rolfe stated that the children loved their mother very much but were concerned about stability in their lives. He said the children needed a regular and consistent home situation. He offered his opinion that the children should be made permanent wards of the court to ensure a stable living situation. He offered no testimony that would indicate they had been neglected.

Elton Kirk was qualified as an expert in clinical psychology. He testified that he had been meeting weekly with respondent. He said that respondent had not been trying to change her behavior during these sessions but was merely complying with a court order to see a therapist. Kirk stated that respondent possibly could be a good parent if she made a serious commitment to psychotherapy and learned child care and home economy skills. He indicated, however, that long-term treatment was necessary. He said that respondent had not indicated that she was willing to make changes necessary to comply with court orders but had stated that she did not think it was fair for the court to tell her how to care for her children.

Ellen McKay testified that she had filed a petition and that the allegations therein were true. Most of the allegations in the petition have little or nothing to do with whether respondent was unable to provide a fit home by reason of neglect. Those that should be regarded as relevant include:

(1) The previous allegations in the temporary custody proceedings. These allegations, which had been admitted, could be considered at the permanent custody hearing. *In re Sharpe,* 68 Mich App 619, 626; 243 NW2d 696 (1976), *In re LaFlure, supra,* 391.

(2) Respondent had been terminated by a clinical psychologist. He indicated that she was emotionally and psychologically immature but was "unmotivated" for psychological treatment as her only reason for seeking counseling was a court order.

The poor prognosis could be considered as evidence that respondent would be unlikely to improve in the care that admittedly had been inadequate for her children.

(3) Respondent was incarcerated in lieu of pay-

ing more than $500 in fines for traffic offenses and after being convicted of passing bad checks.

(4) Kathren was described as experiencing "tremendous anger and confusion because of her chaotic family situation". The report also alleged that she said her mother could not care for her and her brothers.

(5) Purcell exhibited confusion and anxiety for two days after all-day visitations with the mother.

(6) Dr. Rolfe, the children's counselor, recommended that the children remain in foster care. The allegation continued:

"Butch has finally made it clear that his anger is due to being devastated and disappointed by the continuing failure of his mother to take care of him. Both Butch and Kathy state their mother has made a whole string of promises she has not kept. They are embarrassed by her continued involvement with the Court due to traffic tickets and insufficient funds checks."

(7) Respondent failed to comply with court orders to find suitable lodging, to meet regularly with her therapist, and not to allow anyone to live in her home unless the court gave permission.

Along with these allegations, the court was required to consider the policy of the law to keep children with their natural parents when at all possible. MCL 712A.1; MSA 27.3178(598.1), *In re Mathers, supra,* 533-534.

This evidence does appear to be more than sufficient to support the probate judge's findings that respondent's home was unfit. There was no error in ordering the children conditionally into permanent wardship.

Finally, we must determine whether the probate court abused its discretion in finding that respondent had failed to comply with the conditions

agreed upon and in allowing the order of permanent wardship to take effect.

Respondent argues that, where she substantially complied with the spirit of all the conditions imposed by the court and showed an improvement in her condition, the probate court abused its discretion in terminating her parental rights.

Petitioner contrarily contends that the evidence presented to the probate court clearly and convincingly demonstrated respondent's failure to satisfy the agreed upon conditions.

As indicated previously, the probate court ordered that the termination of respondent's rights not go into effect until respondent was given an opportunity to show that she had complied with 14 conditions for a period of 90 days. At the end of that period, if respondent showed compliance, the agreement was that the court would not allow the order to take effect.

This procedure is not established by statute. The nature of the final hearing in this case was, however, similar to that of a petition for rehearing as authorized by MCL 712A.21; MSA 27.3178(598.21). In a rehearing, as well as in the final hearing in the instant case, the burden rests on the parent who is seeking to regain custody. Placing the burden of proof on the parent at such a hearing does not deprive the parent of any rights, so long as the state has met its burden of proof at earlier hearings. *In re LaFlure, supra,* 386-387.

The one difference in the two proceedings is that the parties had agreed that the issue to be resolved in this case was whether respondent had complied with the 14 conditions. This limitation was not challenged at the proceeding, as respondent did not seek to introduce any additional evidence of the fitness of her home. Instead, re-

spondent's attorney objected when a question regarding evidence outside the scope of these conditions was asked, and the question was withdrawn in response to the objection.

While a different question might be presented if respondent had been prevented from showing other relevant evidence, the limitation on the scope of the inquiry was agreed to by the parties and was not prejudicial to the respondent. We suggest that such limited inquiry made respondent's case much easier to prove as she knew precisely what evidence the court would be considering and could direct her behavior toward those points for a period of three months.

At the hearing, respondent testified and called her partner in the trash business, Melvin Cobb, in her behalf. The prosecution called respondent's caseworker, Ellen McKay. The testimony that was presented was summarized by the probate court. Briefly, the court found:

(1) Respondent had complied with the condition that adequate housing be secured.

(2) Respondent did not demonstrate complete compliance with the condition that she be sole resident of her home.

(3) The court found that respondent had not demonstrated complete compliance with the condition that she have no nonfamily overnight guests.

(4) The court found that respondent had not provided her caseworker with monthly rent receipts. Respondent did produce these in court, however, and indicated that the caseworker had told respondent not to give them to her. While the caseworker denied this in court, she stated in her report to the court that she had suggested that respondent contact her attorney about pay stubs "and other orders".

(5) The court found partial compliance with the condition that respondent obtain employment at the applicable minimum wage and provide earning records. The court recognized that when respondent was self-employed no earnings records were available. The court found that respondent had not complied before the period of self-employment. The court examined respondent's earnings per hour and found noncompliance with the requirement that she earn at least the minimum wage. While respondent's weekly wage was approximately the minimum wage level, the court noted that she worked from 50 to 70 hours per week to earn this amount.

(6) The court found that respondent had worked without any absences.

(7) The court found no reason to find that respondent had not complied with the requirement that she seek financial counseling, based on the fact that there was little evidence as to what the recommendation was.

(8) The court found definite noncompliance with the condition regarding psychotherapy. It found that respondent had not promptly contacted a psychotherapist, had not met weekly as scheduled, and had not produced a report showing progress.

The probate court considered this condition "the most significant".

(9) The court found that respondent had not violated any laws.

(10) The court found that respondent had met the restrictions on visitation of her children.

(11) The court found partial compliance with the condition that respondent contact her caseworker weekly.

(12) The court found compliance with the remaining conditions.

Our own review of the record in this case leads us to the conclusion that the court did not clearly err in reaching these conclusions and that its decision to make unconditional the permanent termination of parental rights was not an abuse of discretion. Had the court done so merely on the basis of the nonproduction of rent receipts, we would not hesitate to find an abuse of discretion. While respondent may have attempted to "do her best" in complying with the 14 conditions (and we are not convinced that she did) the fact remains that she did not, in actuality, comply with them, especially with respect to that condition considered most significant by the probate court. Accordingly, we affirm the decision of the probate court, as well as that of the circuit court.

Affirmed.