Jimmie Fay WIMBERLY (Petitioner), Respondent,

v.

Perrin D. McELROY, Administrator W.W.A. of the Estate of Joshua Wimberly, Jr., Deceased, Appellant.

No. 22424.

Kansas City Court of Appeals.

Missouri.

Oct. 1, 1956.

Daniel L. Brenner, James E. Lockwood, Kansas City, for appellant.

Lancie L. Watts, Marvin C. Hopper, Watts, Shafer & Hopper, Kansas City, for respondent.

BROADDUS, Judge.

This is an appeal from the judgment of the Circuit Court adjudging that an order of the Probate Court of Jackson County granting ancillary letters of administration, with will annexed, to Perrin D. McElroy, Public Administrator of Jackson County, on the Estate of Joshua Heard Wimberly, Jr., deceased, was null and void; and adjudging that a subsequent order of said Probate Court revoking said letters was in all respects correct and proper.

There is no substantial dispute as to the facts. Joshua Heard Wimberly, Jr., died testate on September 24, 1953, while a resident of California. He was survived by his widow, Jimmie Fay Wimberly, petitioner-respondent herein, and by two children, all residents of Los Angeles, California. He was also survived by his parents, J. H. Wimberly, Sr., and Eunice Wimberly, and by a sister, all of whom resided in Houston, Texas.

Prior to his death decedent had become mentally incapacitated. Petitioner had been appointed his guardian and curator on July 16, 1952, by the Superior Court of Maricopa County, Arizona, at which time they were living in Phoenix, Arizona. On March 4, 1953, decedent was taken to a sanitarium at Garden Grove, California, where he remained until the date of his death. On or about June 25, 1953, petitioner and her two children moved to Los Angeles in order to be nearer the decedent. After the change of residence, the Arizona guardianship was terminated, and petitioner was appointed decedent's guardian and curator in California on August 24, 1953. The California guardianship remained in effect until terminated by reason of death.

The decedent's will was duly admitted to probate in the Superior Court of Los Angeles County, California, on October 29, 1953, and on the same date petitioner was appointed executrix and letters testamentary were issued to her.

Decedent's estate consisted of certain tangible items of personalty situated in California, as shown by the inventory filed in that State. Also included in the estate was a promissory note in the sum of $100,000. The maker of this note was the Superior Distributing Company, a corporation of Missouri, whose only offices are located in Kansas City, Missouri. The note is payable in annual installments ending January 31, 1961, to petitioner as guardian of the person and estate of Joshua Heard Wimberly, Jr. It was secured by a pledge of shares of stock of the Superior Distributing Company, which shares were and are in the possession of the City National Bank and Trust Company of Kansas City, Missouri, pursuant to an escrow agreement. The latter provides, among other things, that upon default in payment, the escrow agent is charged with the duty of selling said shares and distributing the proceeds of such sale in accordance with its terms. The note, which was listed in the California inventory, specifies that it is payable at the City National Bank and Trust Company in Kansas City.

The will of Joshua Heard Wimberly, Jr., provided that after payments of debts and an absolute bequest of household furnishings and automobiles to petitioner, the residue of the estate would pass to petitioner and the Commerce Trust Company, Kansas City, Missouri, in trust for the purposes therein recited.

Under the terms of the trust the testator's father and mother were to receive the sum of $150 per month during their lifetime and the lifetime of the survivor.

The above mentioned $100,000 note has continuously remained in petitioner's possession in California. There is no real property or tangible personal property belonging to deceased's estate located in Missouri. Petitioner has testified that on her best information and belief there are no debts of the estate in Missouri.

About the middle of October, 1953, Mr. Wimberly, Sr., called Mr. Daniel L. Brenner, an attorney in Kansas City, on the telephone, from Houston, Texas, relative to "some business" he was helping Wimberly, Sr., transact. During the conversation Wimberly, Sr., asked Brenner "how this estate was to be managed so that the Commerce Trust Company would handle it." Brenner informed Wimberly, Sr., that a Public Administrator would have to be appointed in Missouri, and Wimberly, Sr., indicated that would be agreeable with him. After being advised of Mr. Wimberly's wishes, Mr. Brenner, on October 26, 1953, went to the office of Perrin D. McElroy, Public Administrator, and requested McElroy to apply for ancillary letters of administration on decedent's estate. Mr. McElroy inquired of Brenner whether some communication from Wimberly, Sr., requesting ancillary administration would be desirable. So on November 2, 1953, Brenner prepared and Wimberly, Sr., signed a letter addressed to McElroy which stated: "As a beneficiary under the Last Will and Testament of Joshua Heard Wimberly, Jr., deceased, I do request that ancillary administration of his estate be taken out in Kansas City, Missouri, and that you be appointed ancillary administrator of his estate."

The above letter was delivered to McElroy by Brenner. Mr. J. W. Donnelly, McElroy's chief clerk, took the letter to Mr. Fred B. Mertsheimer, legal advisor to the Probate Court, on November 5, 1953. Mr. Mertsheimer read the letter and instructed Mr. Donnelly that the letter was not for the court file and that it should be retained in the office of the public administrator.

On November 4, 1953, a certified copy of the will of decedent was filed in the Probate Court and on November 6, 1953, letters testamentary, with will annexed, were issued to McElroy on decedent's estate.

On January 11, 1954, an inventory and appraisement was filed in the Probate Court reflecting only one item, to wit, the $100,-000 note heretofore mentioned.

Thereafter, on April 30, 1954, petitioner filed her petition to set aside the letters theretofore issued to McElroy, and after a hearing, said Letters were revoked by the Probate Court on November 26, 1954. From that adverse ruling Mr. McElroy appealed to the Circuit Court. And, as we have stated, the latter court affirmed the order of the Probate Court.

We have jurisdiction of this appeal. While the gross value of decedent's estate inventoried in Missouri amounts to $100,-000, the amount in dispute would under no circumstances exceed $5,000, or the amount of the administrator's commission, which was fixed at 5% under the statute, Section 465.100 V.A.M.S.1949, in effect at the time this controversy arose. The Supreme Court invoked the above rule in determining appellate jurisdiction in In re Wilson's Estate, 320 Mo. 975, 8 S.W.2d 973. That decision was followed by the St. Louis Court of Appeals in In re Christian Brinkop Real Estate Co., 215 S.W.2d 70.

The statute which governs the determination of this case is Section 466.010. Part 1 thereof reads as follows: "No letters testamentary or of administration shall be granted upon the estate of any decedent nonresident as to any shares of stock, bonds, credits or choses in action except upon the application of a creditor within this state or upon the showing to the court by an ancillary administrator within this state that the lands and other personal property of such decedent within this state will not be sufficient to discharge the debts of such estate *or upon a showing to the court by any legatee under, or executor named in, the will of such decedent that by such will a legacy is left, outright or in trust, to a natural person residing in Missouri, or to a corporation, including a national or state bank or trust company having its chief office and principal place of business in this state.* * * *"

The part we have placed in italics was added in 1951. Laws of Missouri 1951, p. 883, V.A.M.S. § 473.667. Those interested in the reasons which prompted the enactment of this statute in 1923, and in a review of the decisions which followed its passage will find an excellent article thereon in 19 Missouri Law Review (1954) pp. 1–47.

Among the questions presented in the able and exhaustive briefs of respective counsel are: (1) Has Missouri the power to authorize administration on the property inventoried in this estate of decedent who was domiciled in California when he died? Such property consists of a debt of $100,000 owed by a Missouri corporation, evidenced by a promissory note located in California, and secured by a pledge of the debtor's stock in such Missouri corporation under an escrow agreement with a Missouri bank. (2) Was J. H. Wimberly, Sr., a "legatee" within the meaning of the above statute?

■ We deem it unnecessary to pass upon the above questions. This for the reason that we have reached the conclusion that, even though it be assumed that the debt was subject to administration in Missouri and that J. H. Wimberly, Sr., was a "legatee", he made no "showing" to the Probate Court, as required by the statute.

Under the statute (unless the property of decedent within this state be not sufficient to discharge the debts of the estate) no letters are to be granted except "upon a *showing to the court by any legatee* under, or executor named in, the will of such decedent that by such will a legacy is left, outright or in trust, to a natural person * * * or to a corporation * * * in this state."

The only reasonable interpretation to be placed upon the statute is that the Legislature intended that the "showing" should be by an executor or legatee who applied to the court for the issuance of letters. Let us assume that a nonresident decedent's will named a Missouri executor, but no Missouri legatee. And let us also assume that the named executor neither filed the will nor applied for letters. Could appellant McElroy or any other stranger make the required "showing" and procure letters? We think not. The statutory language as to "a showing" couples an executor with a legatee—and the same reasoning applies with equal force to the legatee. According to Black's Law Dictionary the word "show" means: "To make apparent or clear by evidence; to prove." It is admitted that Mr. Wimberly, Sr., "never personally appeared in the Probate Court for the purpose of giving any oral testimony in connection with this estate." Nor did he make written application to said court that letters be issued. The record recites that the letters were issued "upon the application heretofore filed," viz., that of appellant McElroy.

The order of the learned Probate Judge revoking the letters was correct. The judgment of the circuit court upholding that order should be, and is, affirmed.

All concur.