IN THE MATTER OF LaFLURE

1. INFANTS—CUSTODY—STATUTES—BURDEN OF PROOF—CONSTITU-
   TIONAL LAW.

   The provision of the probate code that, in periodic proceedings to review the custody of a child who has been placed in the temporary custody of a probate court, the parents must "show" why the child should not be placed in permanent custody of the court and later "establish" a reasonable probability that they will be able to provide a fit home within the next year places the burden of proof on the parents according to the accepted interpretations of the words "show" and "establish"; such a shift in the burden of proof is unconstitutional because due process requires that parental rights may not be terminated unless the state proves by clear and convincing evidence that such a termination is warranted (MCLA 712A.19).

2. INFANTS—CUSTODY—DUE PROCESS.

   A parent's right to the custody of his children is an element of that "liberty" guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States (US Const, Ams V, XIV).

3. INFANTS—CUSTODY—STATUTES—BURDEN OF PROOF—DUE PROCESS.

   The shift in burden of proof to the parents prescribed by the child custody statute must be measured by the same standard used to measure criminal statutory presumptions (MCLA 712A.19).

4. STATUTES—PRESUMPTIONS—CONSTITUTIONAL LAW—DUE PROCESS.

   A statutory presumption in criminal law is unconstitutional, unless it can be said with substantial assurance that the presumed fact is more likely than not to flow from the proved

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 42 Am Jur 2d, Infants §§ 28, 31, 211–212.
[1–8] 59 Am Jur 2d, Parent and Child §§ 26, 27.
[2, 3] 59 Am Jur 2d, Parent and Child §§ 10, 27, 42.
[4] 29 Am Jur 2d, Evidence §§ 10–12, 278.
   Constitutionality of statutes or ordinances making one fact presumptive or prima facie evidence of another, 162 ALR 495.
[9] 59 Am Jur 2d, Parent and Child § 39.

fact, because the Due Process Clause closely circumscribes the use of presumptions to work a deprivation of liberty (US Const, Ams V, XIV).

5. INFANTS—CUSTODY—STATUTES—PRESUMPTIONS.

It cannot be said with any degree of assurance that a situation justifying termination of parental rights necessarily follows from a situation justifying placement of a child in the temporary custody of a probate court, and therefore the provision of the probate code placing the burden on parents to show that their parental rights should not be terminated after the child is placed in the temporary custody of the court is invalid (MCLA 712A.19).

6. INFANTS—CUSTODY—PARENTAL RIGHTS—EVIDENCE.

The state failed to sustain the burden of proof incumbent upon it where on an appeal of a probate court's termination of a mother's parental rights the circuit court premised its affirmance on findings of fact which did not constitute clear and convincing proof that the mother was so unfit as to deserve termination of her parental rights and where only some of the probate court's findings of fact were supported by the record (712A.19).

7. INFANTS—CUSTODY—PARENTAL FITNESS—EVIDENCE—PROBATE RECORDS.

Evidence potentially probative of a mother's fitness as a parent which was excluded by the circuit court may well have prevented the state from sustaining its burden of proof that the mother's situation justified termination of her parental rights and for that reason the Court of Appeals remands to the circuit court for a new trial; the circuit court on retrial must apprise itself of all relevant circumstances and in its discretion may admit evidence of such circumstances or it may consult the records of the original and all subsequent hearings on the custody of the child.

8. INFANTS—CUSTODY—EVIDENCE—TRIAL DE NOVO—PROBATE RECORD.

A parent's fitness is not a static concept, and evidence of a mother's activities subsequent to the termination of her parental rights was relative to her fitness as a mother at the time of a *de novo* trial and should have been received into evidence because the reviewing court in a trial *de novo* is not limited to the record and is entitled to receive all relevant and material evidence submitted by the parties.

9. INFANTS—CUSTODY—EVIDENCE.

Evidence of how a parent treats one child is probative of how that parent may treat other children and is properly admissible in proceedings involving termination of parental rights over an allegedly neglected minor (MCLA 712A.19).

Appeal from Midland, James R. Rood, J. Submitted Division 3 March 7, 1973, at Grand Rapids. (Docket No. 13484.) Decided July 23, 1973. Leave to appeal denied, 390 Mich —.

The parental rights of Ann LaFlure McCaig were terminated by court order as to Gary LaFlure and he was made a permanent ward of the probate court. Ann LaFlure McCaig appeals. Reversed and remanded.

*Edward G. Durance,* Prosecuting Attorney, and *Robert J. Rhead,* Assistant Prosecuting Attorney, for Midland County.

*Paul N. Doner,* for Ann LaFlure McCaig.

Before: R. B. BURNS, P. J., and T. M. BURNS and PETERSON,* JJ.

R. B. BURNS, P. J. On October 14, 1969, the Midland County Probate Court determined that Gary Lee LaFlure was a neglected child. The boy was made a temporary ward of the court and was placed in a foster home. He is still there. We do not have before us the record of the 1969 proceeding. However, from the record we do have before us we have managed to deduce the following: For some time prior to October, 1969, Gary's parents had been living apart. The boy was living with his mother, appellant herein, who worked as a cocktail waitress to support herself and her son. Late one evening the mother refused the babysitter's

---

* Circuit judge, sitting on the Court of Appeals by assignment.

request to return home from work. The police were called. Gary's mother refused their plea to return. We do not know why the babysitter and police thought it necessary for appellant to return home. Finally, a police officer went to the home, found it in a filthy condition, and removed Gary therefrom. Subsequently, a petition was filed in probate court, alleging neglect. The boy's parents were eventually divorced. We know nothing of the whereabouts of Gary's father and of his interest, if any, in custody of his son.

On January 29, 1970, the probate court conducted a review hearing. The court retained temporary custody of Gary, but granted appellant visiting privileges of one afternoon a week. Another review hearing was conducted on August 20, 1970. Once again the court retained temporary custody of the boy. However, appellant's visiting privileges were expanded to alternate weekends in her own home.

On October 3, 1970, while visiting his mother for the weekend, Gary was accidentally burned when he stepped on a faulty floor radiator in the bathroom. Although the probate court was satisfied that the incident was an accident, appellant's visiting privileges were suspended, pending elimination of the radiator hazard. At the hearing on October 22, 1970, at which appellant's visiting privileges were suspended, the probate court indicated a willingness to return Gary to his mother's custody once the radiator hazard was eliminated. Another review hearing was scheduled for January 5, 1971. Before that hearing, appellant moved to another apartment, and married Mr. McCaig.

At the hearing on January 5, 1971, Gary was made a permanent ward of the probate court and appellant's parental rights were terminated. After

a trial *de novo,* the Midland County Circuit Court affirmed. This Court granted appellant's application for leave to appeal. Appellant appeals only the order of termination of January 5, 1971. She does not challenge the determinations or orders made prior to that date.

This appeal raises questions about the proper scope of the various review hearings conducted by the probate and circuit courts and about the placement of the burden of proof in said hearings. The appeal also challenges the sufficiency of the findings used to justify termination of appellant's parental rights in Gary.

I.

Whenever information is given to the juvenile division of a probate court alleging that a child is within the provisions of chapter 12A of the probate code (See MCLA 712A.2; MSA 27.3178[598.2]), the court may, in its discretion, conduct a preliminary inquiry to determine whether further action is warranted. If the court determines that further action is warranted, it authorizes the filing of a petition. MCLA 712A.11; MSA 27.3178(598.11). Once a petition has been filed, the probate court may, after such additional investigation as seems necessary, either dismiss the petition or issue a summons to those having custody or control of the child, ordering them and the child to appear. MCLA 712A.12; MSA 27.3178(598.12). Should it then be determined that the child is within the provision of chapter 12A, the probate court may order such disposition as seems appropriate. See MCLA 712A.18; MSA 27.3178(598.18). Should the child be made a temporary ward of the court and placed in foster care, a hearing must be held within six months, at which hearing the child's

parents or guardian must appear and *"show* the efforts made by them to reestablish a home for the child". If, after such a review hearing, the child remains in foster care in the temporary custody of the probate court, another hearing must be held within one year of the entry of the original order of disposition, at which hearing the child's parents or guardian must appear and *"show* the further efforts made by them to reestablish a home for the child, and * .* * *show* why the child should not be placed in permanent custody of the court". If, after this review hearing, the child continues in the temporary custody of the court, additional review hearings must be held at least annually. MCLA 712A.19; MSA 27.3178(598.19). If a neglected child remains in foster care in the temporary custody of the court for two or more years, the court may assume permanent custody of the child if, after a hearing, the child's parents "fail to *establish* a reasonable probability" that they will be able to provide a fit home within the next year. MCLA 712A.19a(f); MSA 27.3178(598.19a) (f). Any order of the juvenile division of a probate court may be appealed by any aggrieved party to the appropriate circuit court. If the case was commenced in probate court prior to January 1, 1971, appeal is by trial *de novo.* Cases commenced after January 1, 1971, are appealed on the written record. MCLA 712A.22; MSA 27.3178 (598.22); MCLA 701.45a; MSA 27.3178(45.1) and 1970 PA 143. If parental rights are terminated, a petition for rehearing may be filed within three months. After rehearing, the court may enter any supplemental disposition it deems appropriate. MCLA 712A.21; MSA 27.3178(598.21).

In the instant case at the January 5, 1971 hearing the probate court placed on appellant the

burden of proving that she had reestablished a fit home for Gary. The circuit court allowed the trial *de novo* to proceed on the assumption that the burden was on the state to justify termination of appellant's parental rights in Gary. However, the circuit judge expressed the personal opinion that the statutes cited above place the burden of proof on appellant. Appellant claims that she bears only the burden of going forward. We agree.

It is undisputed that a child may not be placed in the temporary custody of a probate court unless the state proves the need for such a custody arrangement. However, because a parent whose child is in the temporary custody of a probate court will lose all parental rights in that child unless he can "show" that termination of such rights is not justified, it is our opinion that the probate code places on the parent in all review hearings the burden of proving that he or she is a fit parent. Statutes and court rules which require a party "to show" a particular fact have long been interpreted as requiring that party "to prove" that particular fact. *Central G R Co v Clark Milling Co,* 149 SE 77, 78 (Ga App, 1929); *State v Allen,* 54 Idaho 459, 460; 34 P2d 45, 46 (1934); *Hughes v Medendorp,* 294 Ill App 424, 428; 13 NE2d 1015, 1017 (1938); *Chumbley v Courtney,* 181 Iowa 482, 486; 164 NW 945, 946 (1917); *Wimberly v McElroy,* 295 SW2d 597, 600 (Mo App, 1956); *In re Lee,* 41 Misc 642, 647; 85 NYS 224, 227 (1903); *In re Walker's Estate,* 161 Ohio St 564, 569; 120 NE2d 432, 435 (1954); *Sears v Birbeck,* 321 Pa 375; 184 A 6, 9 (1936); and *Chapin v State,* 296 SW 1095, 1098 (Tex Crim App, 1927). See also, Black, *Law Dictionary* (4th ed), p 1549; Bouvier, *Law Dictionary* (Rawle's ed), p 3067.

Similarly, because a neglected child who has

been in the temporary custody of a probate court for two years may be placed in the court's permanent custody unless his parents "establish" that a fit home will be available within a year, it is our conclusion that in a hearing pursuant to MCLA 712A.19a(f); MSA 27.3178 (598.19a)(f), a parent must prove the availability of a home within 1 year. "Establish" means to prove. Black, *Law Dictionary* (4th ed), pp 642–643.

However, it is our opinion that such a shift in the burden of proof is unconstitutional.

In *Fritts v Krugh,* 354 Mich 97, 114, 122; 92 NW2d 604, 613, 617 (1958), our Supreme Court recognized a significant difference between evidence necessary to justify temporarily removing a child from the custody of its parents and evidence necessary to justify termination of parental rights. The Court held it a violation of due process to terminate parental rights on the basis of the former and lesser evidence. At first glance it would appear that the shift in the burden of proof at issue herein is contrary to the *Fritts* decision, for the temporary placement of a child in the custody of a probate court can become permanent without additional proof by the state. However, the *Fritts* decision does not control the instant case.

First of all, the Supreme Court cited no authority for its conclusion of constitutional law. We think that the Legislature, the legal profession and the juvenile authorities are entitled to an explained holding.

Second, the *Fritts* case is significantly distinguishable from the instant case. In *Fritts* parental rights were terminated on the basis of evidence insufficient to justify even temporary placement in the custody of the probate court. In the instant case the probate court's original finding of neglect

and its assumption of temporary custody are not challenged. Furthermore, in *Fritts* parental rights were terminated after a single hearing. In the instant case parental rights were terminated only after several review hearings over a period of 15 months. We think the passage of more than one year a particularly significant distinction.

Hence, we must turn to the general principles of due process. A parent's right to the custody of his or her children is an element of that "liberty" guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States. *Meyer v Nebraska,* 262 US 390, 402; 43 S Ct 625, 628; 67 L Ed 1042, 1046 (1923); *Pierce v Society of Sisters,* 268 US 510, 535; 45 S Ct 571, 575; 69 L Ed 1070, 1078 (1925); *May v Anderson,* 345 US 528; 73 S Ct 840; 97 L Ed 1221 (1953). The Due Process Clause closely circumscribes the use of presumptions to work a deprivation of liberty. See *Leary v United States,* 395 US 6; 89 S Ct 1532; 23 L Ed 2d 57 (1969); *United States v Romano,* 382 US 136; 86 S Ct 279; 15 L Ed 2d 210 (1965); *United States v Gainey,* 380 US 63; 85 S Ct 754; 13 L Ed 2d 658 (1965); and *Tot v United States,* 319 US 463; 63 S Ct 1241; 87 L Ed 1519 (1943). Admittedly, *Leary, Romano, Gainey,* and *Tot* were criminal prosecutions, and the proceedings under review herein are not criminal proceedings. MCLA 712A.1; MSA 27.3178(598.1). However, the potential impact of either proceeding is a deprivation of a precious liberty. Due process applies to any adjudication of important rights. *Goldberg v Kelly,* 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970); *Bell v Burson,* 402 US 535; 91 S Ct 1586; 29 L Ed 2d 90 (1971). Accordingly *Leary* and its brethren are not inapposite.

The effect of shifting the burden of proof to

parents in all review proceedings is to create a rebuttable presumption that a situation which justifies placement of a child in the temporary custody of a probate court also justifies termination of parental rights, for, once the former is established by the state, the latter will follow in the absence of proof by the parents. Therefore, the shift in the burden of proof prescribed by the Michigan child custody statute must be measured by the same standard used to measure criminal statutory presumptions. Such presumptions are unconstitutional, unless it can be said with "substantial assurance" that the presumed fact is more likely than not to flow from the proved fact. *Leary v United States, supra,* 82. It cannot be said with any degree of assurance that a situation justifying termination of parental rights necessarily follows from a situation justifying placement of a child in the temporary custody of a probate court. Were it otherwise, the Legislature and our Supreme Court would not have so carefully distinguished temporary custody from termination of parental rights.

Therefore, in the original hearing provided for by MCLA 712A.12; MSA 27.3178(598.12), and in all subsequent review hearings provided for by MCLA 712A.19; MSA 27.3178.19, and MCLA 712A.19a; MSA 27.3178(598.19a), parental rights may not be terminated unless the state proves by clear and convincing evidence that such termination is warranted. However, in the rehearing provided for by MCLA 712A.21; MSA 27.3178(598.21), the burden is on the parent to prove by clear and convincing evidence that the court should supplement its order terminating their parental rights.

Once parental rights have been terminated upon proper proof and by appropriate procedures, the "liberty" of the parents involved no longer in-

cludes the right to the custody and control of their children. Accordingly, the rehearing can work no deprivation of the parents' liberty. Hence, *Leary, Romano, Gainey,* and *Tot* are not applicable.

Nothing in this decision should be read as invalidating those sections of the statute which make relevant to a court's determination regarding custody of a child the passage of time after a child is placed in the temporary custody of the court.

*Fritts v Krugh, supra,* was one of three decisions in which our Supreme Court ordered young children returned to their natural parents after several years in foster care. See also *Harmsen v Fizzell,* 351 Mich 86; 87 NW2d 161 (1957), affirmance upheld on rehearing 354 Mich 60 (1958), and *In re Mathers,* 371 Mich 516; 124 NW2d 878 (1963). Because these three decisions took young children from what they considered to be their homes and placed them with relative strangers, vigorous dissents voiced deep concern for the welfare of the children involved. Wayne County Probate Judge James H. Lincoln echoed that concern. See Lincoln, *Judicial Considerations in Child Care Cases,* 11 Wayne L Rev 709 (1965). Judge Lincoln's years of experience with juveniles led him to conclude that custody disputes must be settled quickly if harm to the child is to be minimized. The judge recommended that parental failure to provide a fit home within two years justify termination of parental rights. It is our opinion that 1966 PA 181, § 19, *i.e.,* MCLA 712A.19; MSA 27.3178(598.19), and 1972 PA 59, *i.e.,* MCLA 712A.19a; MSA 27.3178(598.19a), are a codification of the dissents in *Harmsen, Fritts,* and *Mathers,* and of Judge Lincoln's recommendations.

We cannot say that the temporal considerations enunciated in 1966 PA 181, § 19 and 1972 PA 59

are unreasonable or arbitrary. As a matter of fact, they are grounded in the child's right to a stable and decent environment in which to mature. *Cf. Wyman v James,* 400 US 309; 91 S Ct 381; 27 L Ed 2d 408 (1971). The child's rights must be considered along with those of its parents.

Nor do we think that placing the burden of proof on the state, even at all review hearings, significantly interferes with the Legislature's efforts to provide children with stability to which they are entitled. At every hearing relating to the custody of a child the county juvenile agent must submit a report, based upon an investigation, as to the situation of the child's family and the possibility of that family reestablishing a home for the child. MCLA 712A.19; MSA 27.3178(598.19). If the parents' situation justifies termination of parental rights, this required investigation should so indicate. Hence, no significant additional duties are imposed upon the state.

We do not think it inappropriate that the burden of going forward be placed on the parents. Such a burden is far less onerous than the burden of proof. It merely requires the parents to give any indication whatsoever that the family situation has improved.

## II.

It is our opinion that the state failed to sustain the burden of proof incumbent upon it. The findings of fact upon which the circuit court premised its affirmance of the probate court's termination of appellant's parental rights do not constitute clear and convincing proof that, at the time the circuit court made its decision, appellant was so unfit a mother as to deserve termination of parental rights.

Only some of the circuit court's findings of fact are supported by the record. Those findings are: appellant occasionally operated a motor vehicle, although she had no valid operator's license. Appellant was involved in an automobile accident, perhaps while driving under the influence of alcohol. Appellant did occasionally entertain at her home until rather late and was seen to drink intoxicating beverages. Appellant's third marriage, the current one for purposes of this case, was not particularly stable.

The police officer who investigated the automobile accident in which appellant was involved and the nurse who treated appellant at a local hospital concluded that appellant was drunk because they smelled alcohol and because she was hysterical. The smell of alcohol does not prove intoxication, and hysteria is not an uncommon reaction to involvement in an automobile accident. Appellant's slurred speech may well have been the result of alleged injuries to her mouth. No citation was issued for operating a motor vehicle under the influence of alcohol. Furthermore, if every parent convicted of driving under the influence was, because of that conviction only, an unfit parent, we would have to reopen our orphanages to warehouse the children made permanent wards of the courts. Driving without a valid license betrays disrespect for the law, but not neglect of a minor child.

The fact that appellant entertained occasionally and was seen to drink a beer or two while playing cards with friends or when visiting a local tavern does not mean that she is an unfit mother.

On the other hand, the evidence is undisputed that appellant keeps an orderly home, something she did not do in October, 1969, and that she regularly exercised her visitation privileges.

III.

Ordinarily, when we hold that a party with the burden of proof has failed to sustain that burden, we reverse and order entry of judgment for the opposing party. However, in the instant case we remand to circuit court for new hearings because the circuit judge excluded evidence potentially probative of appellant's fitness as a parent. By excluding such evidence the circuit court may well have prevented the state from sustaining its burden of proof.

Pursuant to objection by appellant's counsel the circuit court refused to permit the state to present evidence relating to the circumstances of that neglect which resulted in the order of October 14, 1969, making Gary a temporary ward of the probate court. Nor did the circuit court have before it the record of the hearing conducted on October 14, 1969, or the records of any of the subsequent review hearings. The circuit court also refused to accept evidence of appellant's activities subsequent to the termination of her parental rights by the probate court on January 5, 1971. The circuit court review of the probate court disposition did not commence until almost six months later, on July 1, 1971.

The purpose of the review hearings provided for by the statute is to determine whether the parents of a child in the temporary custody of the court have managed to "reestablish" a fit home or are likely to do so within the near future. We do not see how such a determination may be intelligently made unless the court making the determination is fully aware of the circumstances which prompted placing the child in the temporary custody of the court and of all subsequent circumstances, if any, which prompted keeping the child

in the temporary custody of the court. Therefore, the circuit court to which this case is remanded must apprise itself of all relevant circumstances. In its discretion, the court may admit evidence of said circumstances or it may consult the records of the hearing of October 14, 1969, and of all subsequent review hearings.

This case is unusual in that it is, undoubtedly, one of the last in which the circuit court will review a probate court custody disposition by means of a trial *de novo.* However, the principle enunciated in the above paragraph is equally applicable to all review hearings in the probate courts. At all such hearings the probate court must be aware of the total circumstances of the case before it. The probate courts are to consider all hearings conducted pursuant to MCLA 712A.12; MSA 27.3178(598.12), MCLA 712A.19; MSA 27.2178(598.19), and MCLA 712A.19a; MSA 27.3178(598.19a), as a single continuous proceeding. Therefore, evidence admitted at any one hearing is to be considered evidence in all subsequent hearings.

When one court reviews another court by means of a trial *de novo,* the superior court is not limited to a review on the record. Rather, the superior court is entitled to receive all relevant and material evidence submitted by the parties. *Brown v Forsche,* 43 Mich 492, 501; 5 NW 1011, 1017–1018 (1880). Since a parent's fitness is not a static concept, much can happen in six months to reflect on that fitness. Therefore, evidence of appellant's activities from January 5, 1971, until July 1, 1971, was relevant to her fitness as a mother as of July 1, 1971. Such evidence, when submitted by the state, should have been received into evidence, unless defective according to one of the traditional

rules of evidence. On remand, should such evidence again be proffered by the state, it is to be admitted.

## IV.

Appellant claims that the circuit court erred when it allowed the state to present evidence of her treatment of a second young son, Mark. We find no error. How a parent treats one child is certainly probative of how that parent may treat other children. On remand, should the state again offer such evidence, it should be received.

Since appellant in this particular case is entitled to review in the circuit court by a trial *de novo,* we remand this case to circuit court for a new trial. The burden shall be upon the state to justify by clear and convincing evidence either retention of temporary custody of Gary or termination of appellant's parental rights. Appellant's fitness to have custody of Gary is to be determined as of the date the circuit court considers this case on remand. MCLA 712A.19a(f); MSA 27.3178(598.19a)(f) shall be considered fully applicable to this case. We hardly need urge all parties to resolve this case with all possible speed. The possibility of harm to Gary, should his present living arrangements be altered, increases with each day.

Reversed and remanded. No costs.

All concurred.