IN THE MATTER OF SHARPE

TUGEN v SCHAEFFER

1. INFANTS—PARENTAL RIGHTS—TERMINATION—CAUSES—PROBATE
   COURT—TEMPORARY CUSTODY—FOSTER CARE—JUVENILE CODE—
   STATUTES.

   The probate court's power to terminate parental rights is not
   limited by a section of the juvenile code to cases where a child
   initially has been placed in foster care in the temporary cus-
   tody of the court; the termination of parental rights is not
   required to be based on causes occurring after a child is placed
   in temporary custody; and, the causes for termination of paren-
   tal rights listed in a section of the juvenile code are not
   exclusive (MCLA 712A.19a; MSA 27.3178[598.19a]).

2. INFANTS—ABANDONMENT—PARENTAL RIGHTS—TERMINATION—PRO-
   BATE COURT—JUVENILE DIVISION.

   The juvenile division of the probate court may terminate parental
   rights at an initial hearing on a petition concerning an aban-
   doned child.

3. INFANTS—JUVENILE CODE—PROBATE COURTS—HEARINGS—CONTINU-
   OUS PROCEEDINGS—EVIDENCE—STATUTES.

   All hearings conducted pursuant to three sections of the juvenile
   code are to be considered by the probate court as a single
   continuous proceeding; therefore, evidence admitted at any one
   hearing is to be considered evidence in all subsequent proceed-
   ings (MCLA 712A.12, 712A.19, 712A.19a; MSA 27.3178[598.12],
   27.3178[598.19], 27.3178[598.19a]).

4. INFANTS—ABANDONMENT—PROBATE COURT—EVIDENCE AT INITIAL
   HEARING—EVIDENCE AT LATER HEARING.

   Evidence of abandonment or any other condition bearing on the

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent
    Children § 15.
  59 Am Jur 2d, Parent and Child §§ 8–25.
[2, 4] 59 Am Jur 2d, Parent and Child § 11.
[3] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent
    Children § 49.

welfare of a child, shown at an initial hearing in the juvenile division of the probate court, is to be considered at a later hearing as a basis for a disposition along with evidence of any interim continuation of the condition and evidence of any other interim events bearing on the welfare of the child.

Appeal from Gratiot, Leo W. Corkin, J. Submitted March 8, 1976, at Lansing. (Docket No. 24666.) Decided April 27, 1976.

Petition by Lovetta Tugen in probate court requesting the court to take jurisdiction over Jennifer J. Sharpe, the minor daughter of Judith Ann Schaeffer. The court placed Jennifer J. Sharpe in the permanent custody of the court. Judith Ann Schaeffer appealed to the circuit court. Reversed. Lovetta Tugen appeals. Reversed, and the probate court's order reinstated.

*Randy L. Tahvonen,* for Lovetta Tugen.

*Wilson, Stone & Beale,* for Judith Ann Schaeffer.

Before: QUINN, P. J., and BRONSON and W. R. PETERSON,* JJ.

W. R. PETERSON, J. This is an appeal from a circuit court reversal of a probate court order which terminated parental rights and made Jennifer Sharpe a permanent ward of the court.

Jennifer's mother, who was then divorced and the mother of four older children, three legitimate and one illegitimate, gave birth to Jennifer out of wedlock on August 20, 1968. Four days later she took Jennifer to the Ithaca home of Mr. & Mrs. Carl Tugen. The Tugens, who had a foster parent license, had once cared for her older illegitimate

---

* Circuit judge, sitting on the Court of Appeals by assignment.

child, and an agreement was entered into whereby they would care for Jennifer for $15.00 a week.

During the next two years, Jennifer's mother visited Jennifer four times, each visit being for only a few minutes. In that time she paid only $200.00 to Mr. & Mrs. Tugen. Then, for a period of approximately 2-1/2 years, from 1970 until November 1, 1972, she made no contact with the Tugens, to whom her whereabouts was unknown since she had refused to provide them with her address or telephone number. She was, in fact, in southern Michigan throughout this period, most of the time residing in Lansing, a short drive from Ithaca.

On November 1, 1972, a complaint was filed with the Gratiot County Probate Court by a juvenile officer alleging that Jennifer had been neglected or abandoned by her parents. In consequence, a formal petition was authorized by the court, with Mrs. Tugen being the petitioner. Although properly served, Jennifer's mother failed to appear at the hearing on the petition. The probate court quite properly found Jennifer to be within the jurisdiction of the court under § 2 of the juvenile code,[1] made her a temporary ward of the court, placed her in foster care in the home of the Tugens and scheduled a further hearing for January 17, 1973. At this subsequent hearing, rescheduled to February 1, 1973, Jennifer's mother, newly married, appeared with counsel, and the matter

---

[1] MCLA 712A.2; MSA 27.3178(598.2): "Except as provided herein, the juvenile division of the probate court shall have: * * * (b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county (1) Whose parent or other person legally responsible for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical or other care necessary for his health, morals, or who is deprived of emotional well-being, or who is abandoned by his parents, guardian or other custodian, or who is otherwise without proper custody or guardianship;".

was adjourned, apparently to give her the opportunity to obtain witnesses to appear on her behalf. She made no request to see or visit Jennifer. And, for whatever cause, neither she nor her counsel took steps to bring the matter on for hearing. Eventually, over a year later, on request of the prosecuting attorney and of the attorney for the Tugens, the hearing was resumed on February 28, 1974, resulting in a written opinion and order placing Jennifer in the permanent custody of the court based on a finding of abandonment for a period of approximately two and a half years prior to the filing of the petition and continuing thereafter to the date of the final hearing.

Thereafter Jennifer's mother appealed to the circuit court which reversed the order of the probate court. On August 18, 1975, two days before her seventh birthday, Jennifer was returned to her mother, who, for all practical purposes, had abandoned her at birth. We cannot agree.

The circuit court's review found the findings of fact of the probate court to be supported by the record, but went on to say that the evidence of abandonment *after the initial hearing in the probate court* was not sufficiently clear and convincing to warrant termination of parental rights. The significance of this view of the evidence lies in the circuit court's construction of the juvenile code that "the grounds for making a child a permanent ward of the court must be found to exist at a time when 'a child remains in foster care in the temporary custody of the court following the initial hearing' ", quoting § 19a of the juvenile code,[2] which in pertinent part reads as follows:

"Where a child remains in foster care in the tempo-

---

[2] MCLA 712A.19a; MSA 27.3178(598.19a).

rary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following: * * * (b) The child is left with intent of desertion and abandonment by his parent or guardian in the care of another person without provision for his support or without communication for a period of at least 6 months. The failure to provide support or to communicate for a period of at least 6 months shall be presumptive evidence of the parent's intent to abandon the child. If, in the opinion of the court, the evidence indicates that the parent or guardian has not made regular and substantial efforts to support or communicate with the child, the court may declare the child deserted and abandoned by his parent or guardian."

Because the § 19a enumeration of causes for placing a child in permanent custody follows an introductory reference to the right of the probate court to make a final determination of a cause where a child has been in temporary custody, the circuit court concluded that termination of parental rights for such causes could occur only when the causes existed after the child had been placed in temporary custody. Abandonment, then, no matter how long continued prior to institution of proceedings, could not be a cause for termination of parental rights unless continued for a period of at least six months after an initial order placing a child in foster care in the temporary custody of the court.

It was unfortunate that the addition of § 19a to the juvenile code by 1972 PA 59, in listing the possible causes for termination of parental rights, seems to limit that power of the court to hearings following an initial placement in foster care as a temporary ward of the court, or even to suggest that to warrant termination of parental rights, the

causes must occur after an initial placement in foster care. The draftsmanship of the act leaves much to be desired. But, placed in the context of the entire juvenile code, a different conclusion is reached. Thus § 2 of the act, already noted, gives the probate court jurisdiction over an abandoned child. Section 18[3] gives the probate court the power to make disposition of any child found to be within the act, and § 20[4] provides that every order for disposition or any supplemental order of disposition shall state whether the child is placed in temporary or permanent custody. Clearly, since the court's order on initial hearing is a "disposition", permanent custody is contemplated on the initial hearing.

In much the same manner as did the circuit court herein, this court misread § 19a in *In the Matter of Delbert Kidder, Jr,* 59 Mich App 204, 210; 229 NW2d 380, 383 (1975), *rev'd* 393 Mich 819 (1975), to conclude that "final termination of parental rights may not be made unless the child has been in temporary custody of the court for two years" under § 19a(f).[5] In *Kidder,* parental rights had been terminated by the probate court on initial hearing. On application for leave to appeal, the Supreme Court said:

"This Court, under GCR 1963, 865.1(7) peremptorily reverses the decision of the Court of Appeals which held that the probate court was without jurisdiction to enter the order terminating parental rights. The probate court had jurisdiction of this case under MCLA

---

[3] MCLA 712A.18; MSA 27.3178(598.18).

[4] MCLA 712A.20; MSA 27.3178(598.20).

[5] This followed from a misapplication of *In the Matter of LaFlure,* 48 Mich App 377; 210 NW2d 482 (1973). The writer cannot so read *LaFlure* and did not so understand it when concurring therein. To the contrary, see *LaFlure* at 381–382, 386 indicating that parental rights may be terminated at the initial hearing.

712A.2; MSA 27.3178(598.2) and was authorized to enter the order by MCLA 712A.20; MSA 27.3178(598.20). This Court specifically disapproves the reasoning of the Court of Appeals which determined that MCLA 712A.19; MSA 27.3178(598.19) and MCLA 712A.19a; MSA 27.3178(598.19a) imposed jurisdictional limits on the probate court's authority to act in such cases. The two year provision in § 19a is *not* a minimum jurisdictional time during which a child *must* remain in foster care prior to proceeding to a termination of parental rights. One of the possible criteria for termination is continuing neglect. Sec. 19a provides that two years of foster care constitute prima facie evidence of continuing neglect." 393 Mich at 819–820.

It is, thus, clear that termination of parental rights may occur at initial hearing.

Moreover, we hasten to add that we do not view § 19a as setting forth the exclusive causes for termination of parental rights. The probate courts are given jurisdiction over all those children whose circumstances bring them within the definitions of § 2 of the juvenile code; and as to all such children, the probate courts are given the power of disposition under §§ 18 and 20 of the code, depending upon the discretion of the court in meeting the best interests of the child. The subparagraphs of § 19a must be viewed only as an illustrative enumeration of criteria which prima facie justify termination of parental rights; those criteria neither mandate permanent custody in every such case nor foreclose permanent custody in other instances where the child is within the jurisdiction of the court and its best interests so require.

Nor do we find merit in the argument that once the probate judge at initial hearing has opted only to make a child a temporary ward of the court, termination of parental rights thereafter can only occur because of a subsequent occurrence of a

§ 19a cause. To so construe the act would be to allow termination on initial hearing without reference to the criteria set out in § 19a, but require prolongation of court proceedings after an initial hearing until the events enumerated therein had thereafter commenced and run their course. We noted in *In the Matter of LaFlure,* 48 Mich App 377, 387; 210 NW2d 482, 487 (1973), the desirability of expeditious settlement of custody disputes to minimize the harm to the child.[6] We also noted therein at 391:

"The probate courts are to consider all hearings conducted pursuant to MCLA 712A.12; MSA 27.3178(598.12), MCLA 712A.19; MSA 27.3178(598.19), and MCLA 712A.19a; MSA 27.3178(598.19a) as a single continuous proceeding. Therefore evidence admitted at any one hearing is to be considered evidence in all subsequent hearings."

Evidence of abandonment, or any other condition bearing on the welfare of a child, shown at an initial hearing, is to be considered at a later hearing with evidence of an interim continuation thereof or other interim events bearing on the welfare of the child, as a basis for a later disposition of the proceeding.

To construe § 19a as foreclosing to the probate courts the power, once children have come under their temporary jurisdiction, to thereafter terminate parental rights unless and until the events enumerated in § 19a thereafter occur would be to destroy the continuity of the juvenile proceeding and to compel delay by withholding from the

---

[6] Which is not to say that a disposition of a juvenile proceeding must be precipitous. The juvenile code, as herein construed, gives the probate judge the power to act speedily where necessary, or to pace the proceeding over such period of time as the exigencies of the case, in his judgment, require.

probate judge discretion in the timing of dispositions after jurisdiction has been initially acquired.

We reverse and reinstate the order of the probate court terminating parental rights, with costs to appellant.