*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DURAN/SMITH, Minors.

UNPUBLISHED
February 17, 2022

No. 356856; 356857
Wayne Circuit Court
Family Division
LC No. 2020-000394-NA

Before: M. J. KELLY, P.J., and STEPHENS and REDFORD, JJ.

M. J. KELLY, P.J. (*concurring in part and dissenting in part*).

I concur in part and respectfully dissent in part. With respect to the majority's holdings that the trial court did not clearly err by finding statutory grounds to terminate respondents' parental rights to BMS and that termination of their parental rights to him was in BMS's best interests, I fully concur. However, I would reverse the trial court's decision to terminate respondents' parental rights to EMD and ERD because the trial court clearly erred by finding that termination was warranted under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*).

Each of those statutory grounds mandates that the trial court must find that there is a reasonable likelihood that the child will be harmed if returned to the home of the parent. See MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*). Here, the evidence shows that EMD and ERD were healthy, were well-cared for, and there was no evidence that they had been physically injured or abused. There were no concerns related to employment or housing: respondent-father was employed and, following a complete home assessment, the Child Protective Services (CPS) investigator stated that there were no concerns with the household and that they had sufficient food for the children. In fact, the only concern directly related to EMD and ERD was that they had not seen a pediatrician in over one year. In the absence of any evidence suggesting that the children had been previously harmed, the CPS investigator speculated that EMD and ERD were at risk due to "threatened harm" because it was "unknown if further along the line that they'll be, as well, victims of abuse or neglect."

As a result, the only non-speculative testimony that EMD or ERD would be harmed if returned to the care of their parents requires the application of the doctrine of anticipatory neglect. Under the doctrine of anticipatory neglect, "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re LaFlure*, 48 Mich App 377, 392; 210 NW2d

-1-

482 (1973). Thus, under some circumstances, it allows the trial court to infer that because a parent abused or neglected one child, he or she will do the same to another child. "However, the probative value of such an inference is decreased by differences between the children, such as age and medical conditions." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). For example, in *In re LaFrance*, 306 Mich App 713, 726-730; 858 NW2d 143 (2014), the respondent-parents neglected the needs of their youngest child, but the record was devoid of evidence that they had neglected or abused their older children. The *LaFrance* Court concluded that the doctrine of anticipatory neglect and the respondent-parents' failure to address their substance-abuse issues was insufficient to warrant termination because of marked and significant differences between the neglected child and the other three children: including age differences between the neglected infant and the older children, whose ages ranged from five to twelve, and because the neglected infant had a medical condition and required special care, whereas the older children did not. *Id.* at 730-731. Similarly, in *Kellogg*, this Court held that the probative value of the doctrine of anticipatory neglect was severely decreased by the nine-year-age difference between the children and by the fact that the older child had a long history of trauma and behavioral issues, which included diagnoses of attention deficient disorder, oppositional defiance disorder, and post-traumatic stress disorder. *Kellogg*, 331 Mich App at 260.

In this case, there are marked and significant differences between BMS and his younger siblings. BMS was approximately two years older than EMD and three years older than ERD. Unlike his sisters, he also had documented behavioral issues. Specifically, medical records introduced by respondent-father showed that approximately one year before the petition was filed, respondents took BMS to a pediatrician and expressed concerns regarding his "prolonged temper tantrums." Another medical record included a nurse's observations that BMS would have occasional temper tantrums and would hit himself on the head and throw items when frustrated. Moreover, unlike his sisters, BMS was diagnosed with post-traumatic stress disorder. Further, although none of the children were taken to a pediatrician in over a year, the record reflects that, unlike BMS, there were no indications that EMD and ERD required any medical treatment during that period. Instead, as reflected by the caseworker's testimony, when they were removed from respondents' care they were healthy, did not have any injuries, and were well-cared for.

On appeal, petitioner argues that EMD and ERD were not taken to the doctor for well-child visits for a substantial period of time. The majority believes that this is evidence of actual neglect. I, however, do not agree that a parent commits actual neglect by failing to take an apparently healthy and uninjured child to a wellness examination. Many parents do not have the luxury of seeking recommended, but not required medical care for their children. Health insurance often does not always cover all of the associated costs and many parents may have to make a choice as to whether to allocate money to what appears to be unnecessary medical examinations versus necessities such as housing, transportation, and food. To hold that the mere failure to take an uninjured and otherwise apparently healthy child to a wellness examination is "actual neglect" ignores the reality that many parents face. With respect to EMD and ERD, the record reflects that they were healthy and uninjured, and petitioner has presented no evidence that the failure to take them to wellness examinations negatively impacted them in any way. Under the individual circumstances of this case, then, the failure to take the children to medical examinations does not rise to the level of neglect, actual or otherwise.

Moreover, the failure to seek medical care for a child who is not exhibiting signs that such care is required is not, standing alone, sufficient to establish a reasonable likelihood that the child will be injured or abused if returned to the care of his or her parent. Although the failure to take an apparently healthy child for a well-child doctor's visit can show that the parent is not a model parent, it is well-established that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents . . . ." *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982).

There was also testimony that it was anticipated that *if* EMD and ERD begin to exhibit the same behaviors that BMS exhibits—i.e., prolonged temper tantrums and included self-harming behaviors—that respondents might do the same thing to them as they had done to BMS. The termination of parental rights, however, requires "more than 'speculative opinions . . . regarding what *might* happen in the future.' " *Id.* at 732 (citation omitted, emphasis original).

In conclusion, the doctrine of anticipatory neglect does not support termination of respondents' parental rights under the facts of this case. Because the trial court's basis for its finding that EMD and ERD will be harmed or abused if returned to respondents' care is based solely on speculation, I am left with a definite and firm conviction that it clearly erred by finding statutory grounds to terminate respondents' parental rights to EMD and ERD. *In re White*, 303 Mich App at 709-710. Consequently, I would reverse the court's order terminating respondents' parental rights to EMD and ERD.

/s/ Michael J. Kelly