*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* P D SMITH, Minor.

UNPUBLISHED
February 06, 2026
12:18 PM

No. 374626
Wayne Circuit Court
Family Division
LC No. 2024-001527-NA

Before: BORRELLO, P.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Respondent appeals by right the order terminating his parental rights to his minor child, PDS, under MCL 712A.19b(3)(b)(*i*) (parent's act caused sexual abuse to child or sibling and sexual abuse is reasonably likely to happen again), and MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned to parent). We affirm.

## I. FACTS

In July 2024, PDS was hospitalized for injuries she sustained while in her mother's[1] care, which prompted petitioner, the Department of Health and Human Services (DHHS), to file a petition requesting that the trial court exercise jurisdiction over PDS and her maternal siblings. After filing the petition—which had initially recommended that PDS be placed with respondent—DHHS learned that respondent had allegedly sexually abused his daughter (PDS's half-sibling), then-11-year-old DP, repeatedly since she was nine years old. Specifically, DP had reported that respondent had sexually abused her "mostly every day" while her mother was at work by either touching her inappropriately or forcing her to watch him masturbate. DHHS then filed an amended petition to terminate respondent's parental rights to PDS at initial disposition. Following a preliminary hearing, the trial court authorized the petition and placed PDS in the care of her maternal grandmother under the supervision of DHHS.

---

[1] PDS's mother was a respondent in the proceedings below but is not a party to this appeal.

-1-

The trial court conducted a combined adjudication and initial dispositional hearing in December 2024. Because DHHS petitioned for termination at initial disposition, the initial-dispositional portion of the hearing acted simultaneously as a termination hearing. At the outset of the hearing, respondent pleaded no contest to jurisdiction and to statutory grounds for termination so that he could proceed to a best-interests determination. As the factual basis for respondent's plea, the trial court relied on the parties' stipulated facts, which were based on a Children's Protective Services (CPS) investigation report.[2] The report reflected that respondent had an extensive CPS history regarding his children with another woman (DP's mother). The report stated that respondent demonstrated "broad trends of Medical Neglect, Threatened Harm, and Physical Neglect," noting that CPS had investigated respondent seven times since 2008 for medical neglect, threatened harm, physical neglect, improper supervision, maltreatment, and substance abuse. The report also detailed DP's allegations of sexual abuse by respondent, agency communications with DP's mother about respondent's alleged sexual abuse of DP, and searches on respondent's cell phone for pornographic images of young girls "with body descriptions that were similar to" DP. After reviewing the petition once more and confirming that respondent understood the various rights he was giving up by entering a plea, the court accepted respondent's plea and entered an order exercising jurisdiction over DPS, finding that the factual basis for the plea had sufficiently established statutory grounds to exercise jurisdiction over DPS and had established, by clear and convincing evidence, statutory grounds for termination of respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*) and (j).[3]

The trial court then moved to the best-interests portion of the hearing. At that point, respondent's counsel requested an opportunity to get a clinical assessment of the parent-child bond, which the court denied because it did not believe one was needed given the extensive information contained in the CPS report. The parties thereafter presented their proofs, which largely consisted of the CPS report and testimony from the CPS investigator and foster-care worker involved in this case, as well as from PDS's mother. After considering all the evidence and testimony provided by the parties, the court concluded that termination of respondent's parental rights was in PDS's best interests. Although the court announced many of its own findings underlying this conclusion, it also "adopt[ed] in [its] entirety the argument made by" DHHS's counsel as to why termination was in PDS's best interests. The trial court subsequently issued an order terminating respondent's parental rights as previously described. This appeal followed.

---

[2] The parties also stipulated to the report being admitted as evidence for the court to consider in its entirety for purposes of the child-protective proceeding.

[3] At the time of the initial-dispositional hearing, respondent had two pending criminal cases against him, both of which involved sexual-assault allegations. Respondent has since pleaded guilty to third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (use of force or coercion to accomplish sexual penetration), and he was sentenced to 15 months in prison and obligated to register as a sex offender. As part of his plea agreement, one count of CSC-I, MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration of victim under 13 years of age by defendant 17 years of age or older), and one count of CSC-II, MCL 750.520c(1)(a); MCL 750.520c(2)(b) (sexual contact with victim under 13 years of age by defendant 17 years of age or older), in another case were dismissed. It is unclear from the existing record whether either case was related to DP.

## II. DISCUSSION

On appeal, respondent does not challenge the trial court's findings that statutory grounds for termination of his parental rights were established by clear and convincing evidence and, instead, only challenges the court's determination that termination was in DPS's best interests.

We review for clear error a trial court's determination regarding a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40-41; 823 NW2d 144 (2012). Clear error exists when the reviewing court "is left with the definite and firm conviction that a mistake has been made." *Id.* at 41 (quotation marks and citation omitted). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We give deference "to the special ability of the trial court to judge the credibility of witnesses." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted).

When determining whether termination is in the best interests of the child, the court should place its "focus on the child rather than the parent." *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020). "The trial court should weigh all the evidence available to determine the child's best interests," and it should consider a variety of factors, including "the child's bond to the parent; the parent's parenting ability; the child's need for permanency, stability, and finality; and the advantages of a foster home over the parent's home." *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 5 (quotation marks, citations, and alterations omitted). "Other factors that the court may consider include the parent's history, the parent's psychological evaluation, the age of the child, and a parent's substance-abuse history." *In re MJC*, 349 Mich App 42, 62; 27 NW3d 122 (2023) (citations omitted). The court may also consider the parent's ability to provide the child a safe and permanent home, "the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption," *id*. (quotation marks, citation, and alteration omitted), as well as "how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all," *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367565); slip op at 4 (quotation marks and citation omitted). The court must also expressly consider a child's placement with a relative, which ordinarily weighs against termination. *Id*. at ___; slip op at 4.

Respondent primarily argues that the trial court, when making its best-interests determination, "almost exclusively" relied on the CPS report and therefore failed to consider all the evidence available to it. According to respondent, while the report was relevant to establishing the statutory grounds for termination, it contained minimal evidence regarding factors relevant to PDS's best interests, and as a result of its myopic view of the evidence, the court's best-interests findings were "woefully inadequate." Had the court properly considered all the available evidence, respondent maintains, it would have been clear that DHHS had not sufficiently proven that termination was in PDS's best interests. We disagree. The record in this case makes clear that the court properly evaluated DPS's best interests based on all the available evidence, which included but was not limited to the CPS report.

To start, the trial court in this case expressly acknowledged that it was required to consider PDS's individual needs and stated that, when making its determination, it did "consider[] [PDS

as an individual child who is ten and a half years old on her own merits." The court also expressly acknowledged that it was required to consider whether termination of respondent's parental rights was for the purposes of adoption. Regarding this factor, the court noted that DHHS did not seek termination of the parental rights of PDS's mother at that time, so the petition to terminate respondent's rights was not for the purpose of adoption. Based on this, the court found that this factor weighed against termination of respondent's parental rights. See *MJC*, 349 Mich App at 62. The court also noted that PDS was placed with her maternal grandmother, which likewise weighed against termination. See *CJM*, ___ Mich App at ___; slip op at 4. Although the CPS report included some information about PDS's placement with her maternal grandmother, it did not contain anything regarding DHHS's decision not to seek termination of the parental rights of PDS's mother. There was, however, testimony regarding both of these points at hearings throughout the proceedings. It is thus clear that the court based its findings for these factors on the entire record before it rather than just on the report.

The record also makes clear that the court duly considered respondent's ability to provide a safe and permanent home for PDS as well as the parent-child bond between them, and had weighed all the evidence available to it when doing so. Regarding the safety and permanency of respondent's home, the court found that respondent had pleaded no contest to the repeated sexual abuse of DP while they lived together approximately one year prior and that, at the time of the hearing, he had multiple criminal sexual conduct (CSC) charges—two of which involved a victim under the age of 13 years old—pending against him. The court found that although there were no allegations of sexual abuse of PDS by respondent at that time, PDS would nonetheless be "at an imminent and an immediate risk of harm" in respondent's care because she faced a significant risk of sexual abuse, particularly given that she was about the same age as DP when respondent first began sexually abusing her. Although the facts underlying the sexual-abuse allegations were detailed more thoroughly in the CPS report, respondent specifically stipulated and pleaded no contest to those particular facts—which the court read into the record at the hearing—and such facts were highly relevant to whether respondent could provide PDS with a safe home. See *MJC*, 349 Mich App at 62; see also *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020) ("[T]he doctrine of anticipatory neglect recognizes that how a parent treats one child is certainly probative of how that parent may treat other children.") (cleaned up).[4]

As for the parent-child bond, there was conflicting witness testimony and evidence. The foster-care worker testified that respondent visited PDS three to four times a month but that he only did so with other family members, and PDS never talked about respondent when the foster care worker met up with her. Additionally, the CPS report indicated that at the time of PDS's July 2024 stay in the hospital, PDS reported that she did not have respondent's phone number and had not seen him in months. Meanwhile, PDS's mother testified that respondent and PDS had a strong bond because she "knows for sure" that PDS "loves her dad." PDS's mother, however, also repeatedly testified that she did not believe the sexual-abuse allegations against respondent, despite

---

[4] To the extent respondent suggests it was improper for the court to consider the doctrine of anticipatory neglect in connection with its best-interests determination, he provides no legal support for this assertion and caselaw clearly reflects otherwise. See, e.g., *In re Mota*, 334 Mich App at 322-323.

the fact that respondent pleaded no contest to all the facts underlying the allegations. The court, when making its findings, described this as a "huge concern," and it is clear from the record that, given all the evidence presented, the court found the other evidence and witness testimony to be more credible than the testimony of PDS's mother; we see no basis to disrupt that credibility assessment here. See *Pederson*, 331 Mich App at 472. Ultimately, the court found that, regardless the strength of the parent-child bond between respondent and PDS, that bond—along with the other factors weighing against termination—were vastly outweighed by the risk of harm to PDS's safety and wellbeing that respondent posed.[5]

The record evidence regarding respondent's parenting abilities and history of domestic violence only further support the court's best-interests determination. Per the CPS report, respondent had previously been investigated by CPS seven times since 2008 for medical neglect, threatened harm, physical neglect, improper supervision, and maltreatment of his other children. The report extensively documented the circumstances of these CPS investigations, and respondent agreed to the admission of the entire report for the court's consideration. Although respondent argues that the court may not primarily rely on the evidence that was used to establish statutory grounds to also assess the best interests of the child, he fails to provide any legal support for his position. Regardless, it is well established that a child-protective proceeding "is 'a single continuous proceeding' " and that, as a result, the court may consider all evidence admitted throughout the entirety of the proceedings when determining whether to terminate an individual's parental rights—a determination which requires sufficient proof of statutory grounds for termination *and* that termination is in the child's best interests. *In re Hudson*, 483 Mich 928, 935; 763 NW2d 618 (2009), quoting *In re LaFlure*, 48 Mich App 377, 391, 210 NW2d 482 (1973); MCL 712A.19b(5) (providing that parental rights must be terminated only after the trial court finds that there are statutory grounds for termination and that termination is in the child's best interests).

---

[5] In raising his argument regarding the parent-child bond, respondent also repeatedly asserts that the trial court failed to consider PDS's preferences, as no evidence of such was presented at the hearing. As the court pointed out when making its findings, however, none of the parties, including respondent, sought to present PDS as a witness to obtain testimony from her about her preferences, despite having the opportunity to do so. And as discussed, the court concluded that the risk of harm respondent posed to PDS far outweighed any bond she may have had with him. Respondent has shown no error by the court in this regard. Similarly, while respondent takes issue with the court's denial of his request to get a clinical assessment of the parent-child bond given the evidence that was already available on the point, he has failed to meaningfully demonstrate what such an assessment would have actually revealed or added, or how the court's handling of the request may have amounted to reversible error.

In sum, the record reflects that the trial court properly weighed all the evidence available to it at the time that it made its best-interests determination, *Simpson*, ___ Mich App at ___; slip op at 5, and we see no clear error in its findings, *id*. at ___; slip op at 3.

Affirmed.

/s/ Stephen L. Borrello
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock