*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re IMP, Minor.

UNPUBLISHED
September 24, 2020

No. 353024
Macomb Circuit Court
Family Division
LC No. 2017-000167-NA

Before: RIORDAN, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his minor son, IMP, pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*). We affirm.

## I. FACTS

Children's Protective Services (CPS) was contacted after IMP, then three months old, was treated at a hospital for a broken arm. Based on the nature of the injury, hospital staff believed the injury was caused by abuse. At the time of the injury, IMP was at home with respondent and IMP's mother was at work.

Respondent admitted that he broke IMP's arm, but maintained that it was an accident. Earlier that day, respondent drove IMP's mother to work with IMP in the car. When respondent returned home with IMP, he left IMP in his car seat on the floor next to the couch. Respondent fell asleep on the couch and woke up when IMP screamed. Respondent claims he fell off the couch and onto IMP's arm, which was hanging over the side of the car seat. Respondent texted IMP's mother and told her about IMP's scream and subsequent crying, but he did not tell her what caused IMP to scream. IMP eventually quieted down and fell asleep. Respondent did not obtain medical treatment for IMP. IMP's mother knew something was wrong because IMP cried when she attempted to take him out of the car seat after respondent picked her up from work several hours later. IMP's mother took IMP to the pediatrician, who told her to take IMP to the hospital. There, the staff found IMP's radius and ulna bones of his right arm were broken. IMP remained in the hospital for a week.

After the discovery of IMP's injury, respondent was charged criminally and pleaded no contest to third-degree child abuse. Additionally, the instant petition was filed by the Department

-1-

of Health and Human Services (DHHS) for the court to exercise jurisdiction over IMP, order respondent to vacate the home he shared with IMP and IMP's mother, and terminate respondent's parental rights. The court authorized the petition and ordered respondent to vacate the home, leaving IMP in his mother's care. Respondent pleaded no contest to the court's jurisdiction and to the statutory grounds for termination. The trial court found termination of respondent's parental rights to be in IMP's best interests and terminated respondent's parental rights. Respondent now appeals.

## II. ANALYSIS

Respondent argues the trial court clearly erred by finding termination of his parental rights to be in IMP's best interests. Specifically, he argues the future risk of harm to IMP from physical abuse was minimal in comparison to the larger risk of harm from IMP losing his father. IMP's mother could have received full custody of IMP and respondent could have continued to have supervised visits, without risk of harm to IMP. We disagree.

We review the trial court's determination that termination of parental rights is in a child's best interests for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). Best interests are determined on the basis of the preponderance of the evidence. *In re LaFrance Minors*, 306 Mich App 713, 733; 858 NW2d 143 (2014). A trial court may consider evidence introduced by any party and consider the evidence on the whole record to determine whether termination is in a child's best interests. *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000). To determine whether termination serves a child's best interests, the trial court should consider a variety of factors, including:

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

During the pendency of this case, respondent completed numerous parts of a proposed Parent-Agency Agreement (PAA). He completed a parenting class within two months of this case beginning and entered therapy to treat his anxiety. Respondent obtained employment, housing, his driver's license, and a vehicle. For over two years while these proceedings were ongoing, respondent consistently visited IMP for several hours at least once a week. He arrived on time or early for his visits and DHHS had no concerns about IMP's safety or the appropriateness of respondent's conduct during those visits.

However, respondent failed to seek immediate medical treatment for IMP after breaking his arm, and waited several hours for IMP's mother to get home and take him to the hospital. During the four months between the two termination hearings, respondent visited IMP only once and stopped allowing the DHHS designee to supervise his visits because, he contended, the

designee neglected IMP by chain smoking in her small apartment. Respondent further asserted that the designee had "a table full of pills she pops" and would fall asleep with cigarettes in her hand while IMP did whatever he wanted. Yet respondent did not report this supposed neglect to DHHS or the court, despite knowing the designee occasionally babysat IMP in addition to the supervised visits with respondent.

According to IMP's mother, the decision to stop supervising respondent's visits was made by the designee because respondent was not interacting with IMP during his visits. Instead, respondent would spend the time talking about his new girlfriend and the baby they were expecting. Respondent testified that his failure to maintain regular visits during those four months was due to scheduling conflicts between himself, IMP's mother, and the DHHS worker responsible for supervising visits in the absence of a designee. However, the DHHS worker testified that respondent made only three unsuccessful attempts to schedule a visit during that time.

Moreover, in another instance, respondent agreed to give the mother of one of his other five children sole custody of the child they had together, despite knowing she had substance abuse issues, and he made no effort to protect the child. How a parent treats one child is certainly probative of how that parent may treat other children. *In the Matter of LaFlure*, 48 Mich App 377, 392; 210 NW2d 482 (1973); see also *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001).

The trial court expressed concern about respondent's ability to keep IMP safe, and noted that on three occasions respondent failed to respond to the safety needs of his children: first, he did not seek medical treatment for IMP after his arm was broken; second, he had not taken any steps to protect his other child from its substance-abusing mother; and third, he did not report his concerns about the designee to DHHS or the court. Given these concerns, the fact that IMP's mother was providing IMP with a safe and stable environment, and IMP's need for permanency and finality, the court found termination to be in IMP's best interests.

Respondent's improvements and attempts to maintain a relationship with IMP during these proceedings are admirable, but the trial court's concern for IMP's safety and desire to give IMP stability are supported by the record, and constitute valid reasons for terminating respondent's parental rights. *White*, 303 Mich App at 713-714. Respondent's argument that supervised visits could have been continued, apparently indefinitely, is unpersuasive considering the court's desire to give IMP stability and finality. Therefore, the trial court's finding that termination of respondent's parental rights was in IMP's best interests was not clearly erroneous. *Mason*, 486 Mich at 152.

III. CONCLUSION

The trial court properly concluded that termination of respondent's parental rights to IMP were in IMP's best interests. Accordingly, we affirm.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle